85 So.3d 21 (2012)
STATE of Louisiana
v.
Glen Dale NELSON.
State of Louisiana
v.
Melvin M. Goldman.
Nos. 2010-KO-1724, 2010-KO-1726.
Supreme Court of Louisiana.
March 13, 2012.
*24 Southern University Law Clinic, Donald Whitehead North, Baton Rouge, LA, Glen Dale Nelson (Pro Se), for Applicant (No. 2010-KO-1724).
Jerry L. Jones, District Attorney, Geary Stephen Aycock, Assistant District Attorney, for Respondent (No. 2010-KO-1724).
Loyola Law Clinic, Stephen I. Springer, Royal Judson Mitchell, New Orleans, LA, Melvin M. Goldman (Pro Se), for Applicant (No. 2010-KO-1726).
JOHNSON, Justice.[*]
Defendants, Glen Dale Nelson and Melvin Goldman, were convicted by jury of one count of illegal use of weapons in violation of La. R.S. 14:94, four counts of armed robbery in violation of La. R.S. 14:64, and one count of conspiracy to commit armed robbery in violation of La. R.S. 14:26. Both defendants received substantial sentences as habitual offenders. Defendants appealed their convictions, asserting as error the trial court's handling of jury selection, specifically its handling of a "reverse-Batson"[1] challenge by the State. Finding no error by the trial court, the court of appeal affirmed.[2] We granted defendants' writ applications to review the correctness of the court of appeal's decision.[3] Although the defendants asserted additional assignments of error in the court of appeal, none are at issue in this Court. The sole issue addressed by this Court is the reverse-Batson issue. We decline to address the additional assignments of error raised by defendant Goldman.
For the following reasons, we reverse the decision of the court of appeal, vacate the defendants' convictions and sentences, and remand these matters to the trial court for a new trial.

FACTS AND PROCEDURAL HISTORY
On December 2, 2007, three armed men entered a mobile home to rob the occupants who were in the midst of a high-stakes poker game. The robbers had been called to the game by James McGraw, whose task it was to summon them at an appropriate time and then to feign being a victim. One of the victims identified McGraw's half-brother, Glen Dale Nelson, as one of the masked armed robbers. McGraw ultimately pled guilty and identified the remaining two robbers as Melvin Goldman and Keith Blakes, who also pled guilty and implicated defendants, Nelson and Goldman. Nelson and Goldman were represented by separate counsel, but tried together after the trial court denied Goldman's motion to sever.
Trial began on May 18, 2009, and voir dire was conducted with three panels of sixteen prospective jurors. The first panel *25 included five black prospective jurors; the second panel included six black prospective jurors; and the third panel included four black prospective jurors. After the first panel was examined, the trial court stated that peremptory challenges, twelve for each co-defendant and twenty-four for the State, would be exercised simultaneously in writing with duplicate challenges assessed against all parties who exercised them. The court also offered that defense counsel for each co-defendant could confer if they chose, so as not to duplicate their peremptory challenges. Goldman, represented by Mr. Walker, exercised eight peremptory challenges to excuse white jurors and one to excuse a black juror. Nelson, represented by Mr. Racer, used nine peremptory challenges, all against white jurors. In total, seventeen of the eighteen peremptory challenges exercised by the defendants were used to excuse white prospective jurors. The State used seven out of ten peremptory challenges to remove prospective black jurors. With a venire that was approximately thirty-three percent black, the eight jurors provisionally selected at that time were evenly divided along racial lines.[4]
When voir dire resumed, the State urged a reverse-Batson objection, arguing that defense counsel had used their peremptory challenges to exclude white prospective jurors. The State further argued that because defense counsel conferred before striking prospective jurors, the court should consider their peremptory usage together for purposes of Batson. According to the State, the cooperative use of seventeen out of eighteen peremptory challenges to strike white prospective jurors constituted prima facie evidence of discriminatory intent. The trial court initially agreed with the State, stating:
Okay, look, gentlemen, it looks like the State has madematter of fact, I'm about to rule that the State has made a prima facie case. Now, this Batson objection is made againstI'm to deal with the two defendants as an entity. Correct?
Defendants objected, but the trial court ultimately decided to treat Goldman and Nelson as a single entity for purposes of evaluating the Batson challenge.
Counsel for Nelson volunteered his race neutral reasons for exercising each peremptory challenge. After hearing his reasons, the court was inclined to accept them, but proceeded to direct counsel for Goldman to offer his reasons as well.[5] After Goldman offered his race neutral reasons, the trial court considered the racial makeup of the panels and the number of peremptory challenges exercised by the defendants together. The court confirmed its decision that the State had made a prima facie case of a Batson violation. The court went on to discuss defendants' collaboration on peremptory challenges. Defense counsel explained they collaborated only to the extent they did not duplicate peremptory challenges. The trial court agreed there was no inherent problem with the collaboration, but found the collaboration relevant in terms of the Batson analysis. Specifically, the court stated:
There is nothing I regardI don't regard that there is any illegitimacy at all in the defenses [sic] attorneys'the defense parties collaborating, conspiring, if *26 you want to use the word, to maximize their use of exercise of peremptory challenges to maximize its use. In other words, particularly since the state has twenty-four challenges. There's nothing wrong with that at all. What the state is indicatingwhat the state is suggesting is that you-that your collaboration has the effect intended or otherwise of complicating any Batson analysis if you're regardingif they're regarded as a separate exercise. In other words, if you collaborate and they say, Judge, you should take that collaboration into account to determine whether or not these defendants have violated Batson. Now, even if I do decide that collectively you violated Batson, then my question is, how do I deal with the remedy.
The court subsequently clarified that it found defense counsel exercised their peremptory challenges with discriminatory effect but without any apparent intent to discriminate.
The court eventually ruled:
Okay. I'm ruling. The state has made out its prima facie case. I find the race neutral explanations offered by both defendants convincing as to one or more of the individual jurors, but the overall pattern and the vagueness of some of the reasons convinces me that a Batson violation has occurred. The sheer numerical analysis not only makes out a prima facie case, but a compelling case. And the race neutral explanations offered do nothing todo very little to push back on the compelling case. Now, let's get the remedy. Does the state have a suggestion?
After much discussion and disagreement with defense counsel over the proper application of Batson, and in an attempt to clarify the record, the court eventually stated for the record its determination of whether the defendants' race-neutral reasons were adequate as to each stricken juror. The court accepted certain reasons offered by the defendants, but ultimately rejected the race-neutral reasons as to nine prospective jurors after finding that defendants had failed to rebut the prima facie case as to those jurors.[6]
The court adopted a three-part remedy for the Batson violation. First, the court re-seated those prospective jurors for whom the court rejected the proffered race-neutral reasons. Second, the court ruled that the peremptory challenges that had been used impermissibly and whose effects were negated by the reseating would nonetheless not be restored to the defendants. Third, the court further declared that no party would be permitted to strike any of the re-seated jurors. Of the nine prospective jurors ordered re-seated, two could not be located after they were initially dismissed and one was ultimately removed for cause.[7] Ultimately, a twelve-person jury was seated and three alternates were chosen. The final twelve-person jury was comprised of nine white females, two black males, and one white male. Of these, five jurors were re-seated, two originally struck by Nelson and three struck by Goldman.[8]
*27 Following their convictions, both defendants appealed, and the court of appeal affirmed. The court of appeal found no error in the trial court's finding that the State had established a prima facie case of racial discrimination, noting the trial court's "consideration and analysis of Defendants' use of peremptory challenges was exhaustively conscientious and thorough." Goldman, 41 So.3d at 653. The court pointed out defendants collectively used seventeen out of eighteen challenges against Caucasian jurors, and given the racial makeup of the panels, the trial court found this "eyebrow raising." Id.
While the court pointed out defendants' reasons for exercising their peremptory challenges were facially race-neutral, the court found no manifest error in the trial court's determination of discriminatory intent. Id. The court found the trial judge's decisions were carefully considered, and despite an "occasional misstatement" by the trial judge during the course of the lengthy argument, the record did not support defendants' assertion that the trial judge placed on them the burden of proving a lack of discriminatory intent. Id. at 654. The court reasoned that nearly all of the proffered reasons for excusing the re-seated jurors had no basis in the record, and the State ably pointed this out to the trial court, thus satisfying their burden of proof under the third step of the Batson analysis. Id. at 657.
Moreover, the court found no error in the trial court's refusal to allow defendants a second opportunity to peremptorily challenge the re-seated jurors. Id. Since defendants both chose to excuse jurors based upon race, the trial judge did not err in denying them a second opportunity to justify peremptory challenges to the same jurors, even if defendants could proffer some different, ostensibly race-neutral, reason for the peremptory challenge that the challenging party had not raised. Id. In a footnote, the court stated that refusal to allow either defendant to challenge the re-seated jurors arguably falls under "other corrective action" in La. C. Cr. P. art. 795. Id. at n. 6.
In the context of a later assignment of error, the court further found that neither co-defendant suffered prejudice from this procedure because each benefitted from the challenges exercised by the other:
The judge allowed Goldman and Nelson to cooperate in their exercise of peremptory challenges so as to give each Defendant twelve challenges. When the two of them together used 17 out of 18 of those challenges to excuse Caucasian jurors and the court found that these jurors were excused because of their race, the court acted to prevent either Defendant from excusing any juror who had already been excluded by the other Defendant for a pretextual reason. This was a reasonable way for the judge to handle this difficult problem so as not to have to revisit the Batson analysis that the judge had already exhausted for these jurors. Although Goldman was prevented from re-challenging jurors already (improperly) challenged by Nelson, Goldman received the benefit of the other challenges raised by Nelson with which Goldman was not charged. Goldman was not unlawfully deprived of his right to peremptorily challenge any juror because he, like Nelson, had engaged in a pattern of discriminating against the re-seated jurors based on their race.
Id. at 658.

DISCUSSION
In Batson, the United States Supreme Court held that the use of peremptory *28 challenges to exclude persons from a jury based on their race violates the Equal Protection Clause. Batson, 476 U.S. at 96-98, 106 S.Ct. 1712. The holding in Batson was initially adopted by this Court in State v. Collier, 553 So.2d 815 (La.1989), and has been codified by the legislature in Louisiana Code of Criminal Procedure article 795(C) and (D).[9] While Batson discussed a prosecutor's use of peremptory challenges, its holding is equally applicable to criminal defendants. See, Georgia v. McCollum, 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992). The Court in McCollum specifically held "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges." 505 U.S. at 59, 112 S.Ct. 2348. Further, in State v. Knox, this Court considered whether the State may successfully object during voir dire to a minority defendant's alleged racially discriminatory exercise of peremptory challenges. 609 So.2d 803 (La.1992). We applied McCollum to hold that the State may invoke Batson where a black criminal defendant exercises peremptory challenges against white prospective jurors. Id. at 806. An accusation by the State that defense counsel has engaged in such discriminatory conduct has come to be known as a "reverse-Batson" challenge.[10]
The Court in Batson outlined a three-step test for determining whether a peremptory challenge was based on race. Under Batson and its progeny, the opponent of a peremptory strike must first *29 establish a prima facie case of purposeful discrimination. Second, if a prima facie showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. Third, the trial court then must determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination. Batson, 476 U.S. at 94-98, 106 S.Ct. 1712. See also, Johnson v. California, 545 U.S. 162, 168, 125 S.Ct. 2410, 2416, 162 L.Ed.2d 129 (2005); State v. Sparks, 1988-0017 (La.5/11/11), 68 So.3d 435, 468; State v. Givens, 99-3518 (La.1/17/01), 776 So.2d 443, 448.
After reviewing the record and law, we find the court of appeal erred in affirming the trial court's decision. We hold the trial court erred in its application of the three-step Batson test and in its formulation of a remedy for the alleged Batson violation. In a procedure that confounded steps two and three of Batson, we find the trial court erred in two respects. First, the trial court refused to accept the race-neutral reasons offered by defendants, and instead placed the burden on the defendants to rebut the State's prima facie showing of discrimination. Second, and most significantly, the trial court declined to find that defense counsel engaged in purposeful discrimination but instead found that discriminatory effect alone constituted Batson error. Further, we find the trial court's remedy erroneously deprived defendants use of their peremptory challenges.

BatsonStep One
To establish a prima facie case, the objecting party must show: (1) the striking party's challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the peremptory was used to strike the venire-person on account of his being a member of that cognizable group. Batson, 476 U.S. at 96, 106 S.Ct. 1712; Sparks, 68 So.3d at 468; Givens, 776 So.2d at 449. If the trial court determines the opponent failed to establish the threshold requirement of a prima facie case (step one), then the analysis is at an end and the burden never shifts to the proponent of the strike to articulate neutral reasons (step two). Sparks, 68 So.3d at 468-89; State v. Duncan, 1999-2615 (La.10/16/01), 802 So.2d 533, 544.
We find it is unnecessary to determine whether the trial court erred in finding the State satisfied the first step of Batson by making a prima facie showing of racial discrimination by defendants. Here, because defendants offered race-neutral reasons for their use of peremptory challenges, the preliminary issue of whether the State made a prima face showing is moot. Hernandez v. New York, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991); Sparks, 68 So.3d at 473; State v. Allen, 2003-2418 (La.6/29/05), 913 So.2d 788, 798; State v. Jacobs, 1999-0991 (La.5/15/01), 803 So.2d 933, 941; State v. Myers, 1999-1803 (La.4/11/00), 761 So.2d 498, 502. We have previously held that the trial court may "effectively collapse the first two stages of the Batson procedure, whether or not the [State] established a prima facie case of purposeful discrimination, and may then perform the critical third step of weighing the [State's] proof and the [defendant's] race-neutral reasons to determine discriminatory intent." Jacobs, 803 So.2d at 941.
Our analysis proceeds to review of the trial court's application of steps two and three of Batson.

BatsonSteps Two and Three
Pursuant to step two of the Batson analysis, the burden shifted to the defendants to articulate race neutral reasons for their use of peremptory challenges. *30 To rebut a prima facie showing of intentional discrimination, the proponent of a peremptory challenge must offer a race-neutral explanation. Batson, 476 U.S. at 97, 106 S.Ct. 1712. See also, Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008); Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995). This explanation does not have to be persuasive, or even plausible, but must be more than a mere affirmation of good faith or assumption that the challenged juror would be "partial to the defendant because of their shared race." Purkett, 514 U.S. at 768, 115 S.Ct. 1769; Hernandez, 500 U.S. at 360, 111 S.Ct. 1859; Batson, 476 U.S. at 97, 106 S.Ct. 1712. At the second step of the Batson inquiry, the issue is the facial validity of the striking party's explanation. Purkett, 514 U.S. at 768, 115 S.Ct. 1769; Hernandez, 500 U.S. at 360, 111 S.Ct. 1859; Sparks, 68 So.3d at 474. Unless a discriminatory intent is inherent in the striking party's explanation, the reason offered will be deemed race-neutral. Id.
According to the record, before the trial court finalized its decision that the State had satisfied step one of the Batson analysis, the defendants offered race-neutral reasons for their use of peremptory challenges. After hearing the reasons for each stricken juror, the court concluded that the reasons given for nine of the jurors were not sufficient to overcome the prima facie case made by the State and ordered those jurors to be re-seated, as outlined under La. C. Cr. P. art. 795(E). The proffered race-neutral reasons for these nine jurors are summarized below:
Tonya Harper-SmithCounsel for Nelson argued that Ms. Smith was pro-prosecution because she interacted freely with the State during voir dire, while counsel for Nelson did not get much interaction. She also expressed suspicion over family members offering alibis for defendants because they would have a motivation to be untruthful. The court ruled Nelson's reasons were not compelling, and ordered Ms. Smith re-seated on the panel.
Angela MaherCounsel for Nelson explained that Ms. Maher believed she knew the assistant district attorney on the case because they both had fishing camps on Lake Claiborne. Further, Ms. Maher expressed reservations about defense alibis, believing a friend or a relative would automatically take up for the defendant. The Court found her connection with the district attorney to be tenuous, and combined with the fact that she was dismissed by a backstrike, ordered her re-seated. The trial court later stated he was ordering her re-seated because the reasons offered failed to negate the prima facie case established by the State. Ms. Maher was later removed for cause.
Angela D'AngeloCounsel for Nelson urged that Ms. D'Angelo strongly favored the prosecution "in the sense of being okay with people who flip" (witnesses who testify pursuant to a plea bargain). Further, Ms. D'Angelo expressed reservations about defense alibis, believing a friend or a relative would automatically take up for the defendant. The court did not find the reasoning to be specific enough and ordered her re-seated on the panel. The trial court later stated he was ordering her re-seated because the reasons offered failed to negate the prima facie case established by the State.
Brandi CruseCounsel for Nelson stated she was not very interactive with him in terms of eye contact. He further elaborated: "My biggest thing with her was she didn't interact with me. She sat there like a lump and didn't want to answer questions and didn't look at me. It's basically there was no interaction whatsoever with me." Counsel viewed her as a follower *31 that was "going to sit there and do whatever." The court ordered her re-seated without specific reasons. The trial court later stated he was ordering her re-seated because the reasons offered failed to negate the prima facie case established by the State.
Kyle NordmanCounsel for Nelson urged that Mr. Nordman misunderstood the burden of proof, believing it was defendant's duty to disprove his guilt. The State rebutted that Mr. Nordman was rehabilitated upon further questioning, and expressed his understanding of the State's burden of proof and the defendant's choice not to testify at trial. The court re-seated Mr. Nordman on the panel without specific reasons.
Lucky ReedCounsel for Nelson stated he perceived Mr. Reed was not serious about jury service. Mr. Reed was late arriving for jury service, flippant in responses to questions, and appeared to interact in a flirtatious manner with a female juror. The court initially ordered Mr. Reed re-seated, but then noted he was not available. Sandra Clower Counsel for Goldman stated Ms. Clower's overall demeanor appeared to be very pro-State. She acted in accord with the district attorney, nodding her head in agreement when he spoke. He further averred that Ms. Clower's favorable view of witnesses who testify in exchange for plea deals was additional evidence of bias toward the State. The court ordered Ms. Clower returned to the panel without reasons.
Sandra SibleyCounsel for Goldman stated Ms. Sibley seemed to be very pro-police. She was convinced that police officers never made an arrest without sufficient evidence. The court rejected the defendant's reasons because they "failed to negate the presumption raised by the State establishment of a prima facie case." However, Ms. Sibley was not re-seated because she was unavailable.
Pamela AuttonberryCounsel for Goldman was concerned about her view on alibi witnesses. Counsel stated she was very negative about alibi witnesses, believing friends and family would lie for the defendant. Counsel noted her view that "reputable" witnesses were preferable to family and friends of defendant. The court found the reason insufficient to "rebut a prima facie case of racial discrimination established by the state" and re-seated Ms. Auttonberry.
After reviewing the race-neutral reasons offered for each of the nine jurors ordered re-seated, we find the trial court improperly applied step two of the Batson analysis, and erred in refusing to accept defendants' proffered race-neutral reasons. A fair reading of defendants' explanations for striking these jurors reflect race-neutral justifications. Louisiana courts have found a myriad of explanations to qualify as race-neutral reasons. See, e.g., State v. Scott, 04-1312 (La.1/19/06), 921 So.2d 904 (State's justification for striking a prospective African-American juror, that she had a son the same age as defendant and would feel sympathy for defendant's mother, was sufficiently neutral to survive a Batson challenge), cert. denied, 549 U.S. 858, 127 S.Ct. 137, 166 L.Ed.2d 100; State v. Wilson, 40,767 (La.App. 2 Cir. 8/23/06), 938 So.2d 1111 (Prosecutor offered legitimate, race-neutral reason for striking African-American juror when it argued that juror was a minister's wife and might hesitate to impose the death penalty), writ denied, 06-2323 (La.4/20/07), 954 So.3d 159, cert. denied, 552 U.S. 917, 128 S.Ct. 275, 169 L.Ed.2d 201; State v. Parker, 04-1017 (La. App. 5 Cir. 3/29/05, 901 So.2d 513) (When accepted by the trial judge, the lodging of a peremptory challenge based on a juror's body language does not violate Batson), *32 writ denied, 05-1451 (La. 1/13/06), 920 So.2d 235; State v. Woods, 97-0800 (La. App. 1 Cir. 6/29/98, 713 So.2d 1231) (Prospective juror's mistaken belief that prosecutor had represented prospective juror in a lawsuit was a legitimate, race-neutral justification for state's peremptory strike), writ denied, 98-3041 (La.4/1/99), 741 So.2d 1281.
This Court has followed federal jurisprudence in holding that the explanation offered need not be persuasive, or even plausible, and unless a discriminatory intent is inherent in the explanation, the reason offered may be deemed race-neutral. See, Allen, 913 So.2d at 798; Jacobs, 803 So.2d at 938. In reviewing the trial court's action, the court of appeal ignored these guidelines, merely finding that the race-neutral reasons offered by defendant were "thin" and that the State had adequately rebutted each of those reasons. Nelson, 41 So.3d at 657. While the trial court found the number of challenges against white jurors to be "eyebrow raising," we find defendants presented plausible and reasonable race-neutral reasons that negate an inference of purposeful racial discrimination sufficient to satisfy step two of Batson. Whether the reasons are substantial, or whether they are supported by the record, is a question to be determined in the third stage of the Batson analysis. State v. Green, 94-0887 (La.5/22/95), 655 So.2d 272, 289. The burden in step two is merely one of production, not one of persuasion. Myers, 761 So.2d at 501.
In step three of the Batson analysis, the court must then determine whether the objecting party has carried his burden of proving purposeful discrimination. Miller-El v. Dretke, 545 U.S. 231, 125 S.Ct. 2317, 2331-32, 162 L.Ed.2d 196 (2005); Batson, 476 U.S. at 98, 106 S.Ct. 1712. This final step involves evaluating "the persuasiveness of the justification" proffered by the striking party, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, 514 U.S. at 768, 115 S.Ct. 1769.
In Purkett, the Supreme Court warned against "combining Batson's second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive." Purkett, 514 U.S. at 768, 115 S.Ct. 1769. Instead, the Court noted "[i]t is not until the third step that the persuasiveness of the justification becomes relevantthe step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." Id. The Court explained that blurring the Batson stages can impermissibly shift the burden onto the proponent of the strike:
But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step three is quite different from saying that a trial judge must terminate the inquiry at step two when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.
Id.
After reviewing the record, it is clear the trial court merged the steps of the Batson analysis which improperly shifted the burden of proof to defense counselthe proponent of the strike. The record unquestionably demonstrates the trial court never made a finding that the race neutral reasons offered by defendants were pretextual. Although none of the proffered reasons appears to inherently violate equal protection, the court nonetheless rejected nine of them for no specific reason. In rejecting defendants' proffered *33 race-neutral reasons, the trial court reasoned that defendants failed to rebut the State's prima facie case of discrimination, essentially finding the defendants' reasons not persuasive enough. The court erred in putting the burden of persuasion on the defendants. See, Green, 655 So.2d at 290. Batson makes clear that the burden is on the opponent of the strike to show purposeful discrimination. See, Batson, 476 U.S. at 94, 106 S.Ct. 1712.[11]
Even more remarkable is the fact that the trial court ordered the jurors re-seated although it declined to find that defense counsel engaged in purposeful discrimination. The record reflects the court ordered the jurors re-seated immediately after hearing and rejecting defendants' race-neutral reasons, without conducting an analysis of any of the considerations found indicative of purposeful discrimination, as set forth by the Supreme Court. See, Miller-El, 545 U.S. at 255-63, 125 S.Ct. 2317. The trial court made repeated statements that although there was no evidence to suggest defense counsel's reasons were pretextual or that defense counsel had any discriminatory intent, the discriminatory effect of the peremptory challenges used by defense counsel was sufficient to violate Batson.
The trial court's reluctance to impugn the motive of counsel and refusal to find purposeful discrimination runs afoul of the Supreme Court's reminder in Hernandez:
A court addressing this issue must keep in mind the fundamental principle that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."
Hernandez, 500 U.S. at 359-60, 111 S.Ct. 1859 (internal citations omitted). The Court further explained that "[d]iscriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker. . . selected . . . a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." Id. (Internal citations omitted). A determination of "purposeful discrimination" or "discriminatory intent" or "discriminatory motive" is essential in step three. See, Batson, 476 U.S. at 98, 106 S.Ct. 1712; see also, Miller-El, 545 U.S. at 253, 125 S.Ct. 2317 (discussing clues to "the prosecutors' intentions"); State v. Coleman, 06-0518 (La.11/2/07), 970 So.2d 511, 516 (finding "the State consciously took race into account"). We have found no authority to permit a trial court to find a Batson violation based upon a de facto effect alone.
Thus, we find the court of appeal erred in affirming the trial court's finding of a Batson violation. Because the trial court's application of Batson was legally flawed, we must reverse the finding that defendants violated Batson.

Remedy for Batson violation
We further find the trial court erred in formulating a remedy for the alleged Batson violation. In addition to reseating those jurors for whom the court rejected defendants' race-neutral reasons, the court ruled that those peremptory challenges would not be restored to defendants. Moreover, the court ordered that no party would be permitted to strike any of the re-seated jurors. While we find no error in the trial court's decision to reseat prospective jurors accompanied by peremptory forfeiture, we hold the trial court erred in refusing to allow each defendant to use his *34 remaining peremptory strikes on jurors who were re-seated to remedy discriminatory acts by his co-defendant's attorney.
The Court in Batson did not prescribe a particular remedy if discrimination is found, but left it to the state and federal courts to fashion their own remedy:
In light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today. For the same reason, we express no view on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire.
Batson, 476 U.S. at 99 n. 24, 106 S.Ct. 1712 (internal citations omitted). Nationally, courts have formulated various remedies for a Batson violation, including recalling excused jurors, dismissing the entire venire, or granting a mistrial.[12] Further, it appears that a majority of courts have delegated to the discretion of the trial court the determination of the appropriate remedy.[13] In some cases, courts have *35 found the more reasonable approach is to reseat improperly struck jurors and proceed with jury selection.[14] The rationale behind this approach is that "quashing the entire venire does not correct the Batson violation because while the parties are able to select from a new venire, the excluded jurors have still been subjected to discrimination.. . . Second, judicial resources are conserved by not having to go though the time and expense of selecting an entirely new venire." See, e.g., State v. Parker, 836 S.W.2d 930, 936 (Mo.1992). However, other courts have required the discharge of the entire venire whenever a Batson violation has been found. This remedy is generally premised on concerns that arise when reinstated jurors have been tainted by the Batson inquiry.[15]
To codify and implement Batson in Louisiana, the legislature enacted La. C. Cr. P. art. 795. This article gives broad discretion to the trial court to formulate "corrective action" to remedy a Batson violation. Specifically, the article provides that "[t]hose jurors who have been peremptorily challenged and for whom no satisfactory racially neutral or gender neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances." La. C. Cr. P. art. 795(E). We find the trial court's decision to reseat the improperly challenged jurors authorized by Article 795 and consistent with national jurisprudence. We are mindful of the risk that an excused juror may be exposed to prohibited outside influences prior to being recalled. However, we find this potential problem can be handled without requiring dismissal of the entire venire. Here, juror Angela Maher was questioned by the court *36 after being recalled, and admitted to reading a newspaper article about the case. After full examination, the court dismissed her for cause. Thus, we find no error in the trial court's decision to reseat the jurors.
This Court has not previously addressed the issue of whether the associated peremptory strikes should be forfeited after these jurors are re-seated. Our examination of national jurisprudence reveals that some courts have found it appropriate to grant replacement strikes to the striking party.[16] Other courts have refused to grant new peremptory strikes, finding that doing so would reward offending conduct by the striking party. Discussion of the appropriateness of forfeiting misused strikes is generally conducted in terms of punishment and deterrence.[17] After considering the authority given to the trial court pursuant to Article 795 and reviewing relevant national jurisprudence, we hold that forfeiture is a permissible remedy within the discretion of the trial court, and consistent with Batson and its progeny. In People v. Luciano, 10 N.Y.3d 499, 860 N.Y.S.2d 452, 890 N.E.2d 214 (N.Y.2008), the court implied that requiring a litigant to forfeit improperly exercised challenges is "consistent with the Batson inquiry" and within the district court's "broad discretion" when necessary to punish sufficiently egregious misconduct. The court explained:
In holding that forfeiture is a permissible remedy, we note that the free exercise of peremptory challenges is a venerable trial tool that should be denied only in rare circumstances. In fashioning the proper remedy, a trial judge may consider, among other factors, whether the challenged juror is available to be re-seated, whether the litigant appears to be engaging in a pattern of discrimination, and the number of peremptory challenges that remain to be exercised. While even a single instance of discriminatory conduct may warrant forfeiture, where the finding of discrimination is close, forfeiture may not be an appropriate remedy.
Luciano, 860 N.Y.S.2d 452, 890 N.E.2d at 219. Similarly, we hold that forfeiture of peremptory challenges is an acceptable remedy in some cases. The purpose of the Batson rule is to eliminate discrimination. To forbid forfeiture as a remedy offers no deterrent effect for using discriminatory challenges.
*37 Although we find the first two parts of the trial court's remedy to be acceptable and within its discretion, we find the trial court legally erred to the extent it ordered that no party could thereafter strike a re-seated juror. We find no support in the law for the trial court's action.
The trial court clearly grappled with the ramifications of a reverse-Batson challenge lodged against co-defendants who were represented by different counsel. Underlying the court's choice of remedy was the fact that defendants collaborated in exercising their peremptory challenges. Defendants complained they were being penalized for the collaboration, even though they did not collaborate to avoid Batson. In reviewing the trial court's ruling, the court of appeal mischaracterized the collaboration of defendants. The court opined "there was no reason for the judge to allow Defendants a second opportunity to peremptorily challenge the re-seated jurors. . . because of the judge's finding that Defendants had already excluded these jurors primarily because of their race." Nelson, 41 So.3d at 657. However, the court ignored the fact that each defendant was represented by separate counsel and that the race-neutral reason offered for each challenged white juror was offered only by the defendant who lodged the challenge. The record reflects that defendants "collaborated" only to the extent necessary to avoid duplication of peremptory challenges.[18]
Although defendants collaborated on peremptory challenges to avoid duplication, punishing one co-defendant for misconduct attributed to the other is a consequence disconnected from the racially-motivated behavior and therefore of little value as a deterrent or punishment. Moreover, the trial court's restriction prohibiting either defendant from lodging a peremptory challenge against a re-seated juror originally excused by his co-defendant is not supported by law. The Louisiana Constitution grants to criminal defendants the right to challenge jurors peremptorily. La. Const. art. 1, § 17.[19] This Court has long held that "so well established and protected is the right to peremptory challenges by our constitution and laws, it cannot be denied unless the accused voluntarily chooses not to avail himself thereof. It has been called an absolute right." State v. Sevin, 243 La. 1023, 150 So.2d 1, 3 (1963). In cases involving co-defendants, each defendant has a statutory right to twelve peremptory challenges. La. C. Cr. P. art. 799.[20] In turn, the State is provided with twelve *38 peremptory challenges for each defendant. Id.
Thus, by law, both Nelson and Goldman each had use of twelve peremptory challenges. And, while the defendants collaborated on those peremptory challenges to prevent duplication, they were entitled to, and did, exercise their challenges individually. Counsel for each defendant provided his own individualized reasons for exercising his peremptory challenges. If counsel for one defendant is found to have improperly struck a prospective juror on the basis of race, the trial court cannot assume that counsel for the other defendant did, or would do, the same. The co-defendant may have a different and valid reason for exercising a peremptory challenge on the same juror.
Because Batson requires a finding of "purposeful discrimination," it necessarily requires an individualized determination of the motivation and intent of the particular party exercising the peremptory strike. See, Hernandez, 500 U.S. at 360, 111 S.Ct. 1859; Batson, 476 U.S. at 93, 106 S.Ct. 1712. The sole focus of the Batson inquiry is the intent of the proponent at the time he exercised his peremptory strikes. Batson, 476 U.S. at 93, 106 S.Ct. 1712. Treating defendants as one entity for purposes of Batson allowed the trial court to improperly impute one defendant's motives for striking a juror onto the other defendant. The trial court's decision to regard defendants as a single entity and not allow either one to use his remaining peremptory challenges on any of the re-seated jurors, regardless of who exercised the challenge initially, violated each defendant's constitutional and statutory right to use his peremptory challenges. See, La. Const. art. 1 § 17; La. C. Cr. P. art. 799.1.[21]
This court has held that "an erroneous ruling of the court which deprives a defendant of one of his peremptory challenges is a substantial violation of his constitutional right to a fair trial and requires reversal." Sevin, 150 So.2d at 3; see also, State v. Ross, 623 So.2d 643, 644 (La.1993). The practical effect of the trial court's ruling was to deny defendants use of their available peremptory challenges. Thus, we find the court of appeal erred in affirming the trial court's refusal to allow the defendant who had not exercised the strike an opportunity peremptorily challenge the re-seated jurors.

CONCLUSION
For the reasons assigned herein, we find the trial court erred both in its application of Batson, and in formulating a remedy for the alleged Batson violation. Therefore, we are compelled to reverse the decision of the court of appeal, vacate the convictions and sentences, and remand the matters to the trial court for a new trial.

DECREE
JUDGMENT OF THE COURT OF APPEAL REVERSED; DEFENDANTS' CONVICTIONS AND SENTENCES ARE VACATED. THESE MATTERS ARE HEREBY REMANDED TO THE TRIAL COURT FOR A NEW TRIAL.
*39 VICTORY, Justice, concurs in the result with reasons.
GUIDRY, Justice, concurs in part and dissents in part and assigns reasons.
SEXTON, Justice ad hoc, concurs in the result.
VICTORY, J., concurs in the result.*
I concur in the result reached by the majority. However, I point out that given the majority's determination that the trial court's ruling on the reverse Batson challenges was error, the entire discussion about the validity of the trial court's remedy for the Batson violations is dicta.
GUIDRY, J., concurs in part and dissents in part.
I concur in the majority opinion regarding the "reverse Batson" challenge. The race neutral reasons articulated by defense counsel for striking the nine challenged jurors were adequate. Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).
I dissent from the discussion concerning the trial court's choice of remedy. I believe that defense counsel collaboration during voir dire might warrant the type of peremptory challenge limitations imposed by the trial court in this case. However, any discussion of this issue is dicta, since our determination on the reverse Batson issue requires reversal of the convictions and remand for a new trial.
SEXTON, Justice Ad Hoc, concurs in the result.*
I concur in the result reached by the majority.
NOTES
[*] Retired Judge Fred C. Sexton, Jr., assigned as Justice ad hoc, sitting for Clark, Justice recused.
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[2] State v. Goldman, 45,293 (La.App. 2 Cir. 6/23/10), 41 So.3d 642.
[3] State v. Goldman, 2010-1726 (La.4/25/11), 62 So.3d 67; State v. Nelson, 2010-1724 (La.4/25/11), 62 So.3d 68.
[4] A more detailed breakdown of the venire is set forth in the Unpublished Appendix.
[5] The court stated: "All right. Now, look. Let me tell you. By yourself, you know, considering Nelson by himself without any kind of consideration of collaboration with Goldman, not so much. The prima facie case is not so much. Let's talk Goldman now. Then, I'll hook them together and see if it looks different."
[6] These jurors were: Tonya Harper Smith (Nelson), Brandi Cruse (Nelson), Angela Maher (Nelson), Angela D'Angelo (Nelson), Sandra Clower (Goldman), Sandra Sibley (Goldman), Pamela Auttonberry (Goldman), Kyle Nordman (Goldman), and Lucky Reed (Goldman).
[7] Sandra Sibley and Lucky Reed were unavailable. Angela Maher was later removed for cause.
[8] These were jurors Tonya Harper Smith (Nelson), Angela D'Angelo (Nelson), Sandra Clower (Goldman), Pamela Auttonberry (Goldman), and Brandi Cruse (Nelson). Kyle Nordman (Goldman) served as the second alternate, and therefore was not on the final twelve-person jury.
[9] La. C. Cr. P. art. 795 provides:

A. A juror shall not be challenged for cause after having been temporarily accepted pursuant to Paragraph A of Article 788 unless the challenging party shows that the cause was not known to him prior to that time.
B. (1) Peremptory challenges shall be exercised prior to the swearing of the jury panel. (2) Peremptory challenges of jurors shall be made and communicated to the court in a side bar conference of the judge, the attorneys conducting the examination and selection of jurors, and the defendant in a case in which the defendant chooses to represent himself. The conference shall be conducted in a manner that only the court, the attorneys, and the defendant in a case in which the defendant chooses to represent himself, are aware of the challenges made until the court announces the challenges without reference to any party or attorney in the case.
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race or gender of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race or gender, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory race or gender neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
D. The court shall allow to stand each peremptory challenge exercised for a race or gender neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral or gender neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral or gender neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
[10] See, e.g.: U.S. v. Thompson, 528 F.3d 110, 115 (2nd Cir.2008); State v. Juniors, 2003-2425 (La.6/29/05), 915 So.2d 291, 316; State v. Breaux, 45,676 (La.App. 2 Cir. 11/3/10), 55 So.3d 806, 810.
[11] A detailed colloquy between the court and defense counsel regarding the application of Batson is set forth in the Unpublished Appendix.
[12] See, e.g., Butler v. Quarterman, 576 F.Supp.2d 805, 830-31 (S.D.Tex.2008) (finding that the trial court's dismissal of the venire panel was a proper remedy); United States v. Stewart, 65 F.3d 918, 922-23 (11th Cir. 1995) (finding no error in the district court's decision to reseat a juror who was impermissibly stricken because of her race); People v. Moten, 159 Misc.2d 269, 279-80, 603 N.Y.S.2d 940, 946-47 (N.Y.Sup.1993) (discussing the various remedies available "depending on the point on the proceedings when the issue is raised"); People v. Willis, 27 Cal.4th 811, 818, 824, 118 Cal.Rptr.2d 301, 307, 312, 43 P.3d 130, 135, 139 (Cal.2002); State v. Grim, 854 S.W.2d 403 (Mo. 1993) ("[T]he proper remedy for discriminatory use of peremptory strikes is to quash the strikes and permit those members of the venire stricken for discriminatory reasons to sit on the jury if they otherwise would."); Conerly v. State, 544 So.2d 1370 (Miss.1989) ("Having determined that the state's explanation did not provide a valid reason for striking [the juror], the trial court was obligated to seat her on the jury unless the state could suggest another racially neutral reason for striking her."); State v. McCollum, 334 N.C. 208, 433 S.E.2d 144 (1993) ("the simpler and . . . clearly fairer approach is to begin the jury selection anew"); Minniefield v. State, 539 N.E.2d 464 (Ind.1989) (trial court erred by failing to grant mistrial as result of prosecutor's Batson violation); People v. Knight, 473 Mich. 324, 701 N.W.2d 715, 729 (2005) ("Because of the difficulties in retaining stricken jurors, this Court concludes that a Batson challenge is timely if it is made before the jury is sworn. It must be noted, however, that if stricken veniremembers are dismissed and later found to be part of a pattern of discriminatory strikes, the only remaining remedy for the Batson violation would be to discharge the entire venire and start the process anew.")
[13] See, e.g., Jones v. State, 343 Md. 584, 683 A.2d 520, 525-26 (1996); State v. Franklin, 318 S.C. 47, 456 S.E.2d 357, 360 (1995) cert. denied, Franklin v. South Carolina, 516 U.S. 856, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995) ("We hold . . . that it is within the trial judge's discretion to fashion the appropriate remedy under the particular facts of each case"); Ezell v. State, 909 P.2d 68, 72 (Okla.Crim. App.1995) ("We adopt this flexible approach as the best solution. We interpret Batson as suggesting that either remedy may be appropriate depending on the particular circumstances at trial"); Commonwealth v. Fruchtman, 418 Mass. 8, 633 N.E.2d 369, 373 (1994), cert. denied, Fruchtman v. Massachusetts, 513 U.S. 951, 115 S.Ct. 366, 130 L.Ed.2d 319 (1994) ("Choice of remedy was. . . the prerogative of the judge"); Haschke v. Uniflow Manufacturing Co., 268 Ill.App.3d 1045, 206 Ill.Dec. 387, 391, 645 N.E.2d 392, 396 (1994); Friedman v. State, 654 So.2d 50, 52 (Ala.Crim.App.1994), cert. denied, No. 1940189 (Ala. 1995); Koo v. State, 640 N.E.2d 95, 100 (Ind.Ct.App.1994) ("Clearly, the remedy which a particular trial court employs upon a finding of purposeful discrimination is a matter left to the court's discretion."); State ex rel. Curry v. Bowman, 885 S.W.2d 421, 425 (Tex.Crim.App.1993), cert. denied, Texas v. Bowman, 513 U.S. 866, 115 S.Ct. 184, 130 L.Ed.2d 118 (1994) ("[W]here a Batson claim is sustained the court may fashion a remedy in its discretion. . . ."); Jefferson v. State, 595 So.2d 38, 41 (Fla.1992) ("[I]t is within the trial judge's discretion to fashion the appropriate remedy under the particular facts of each case. . . ."); People v. Irizarry, 165 A.D.2d 715, 560 N.Y.S.2d 279, 281 (1990); State v. Walker, 154 Wis.2d 158, 453 N.W.2d 127, 135 n. 12 (1990) cert. denied 498 U.S. 962, 111 S.Ct. 397, 112 L.Ed.2d 406 (1990); U.S. v. Forbes, 816 F.2d 1006, 1011 (5th Cir.1987).
[14] See, e.g., U.S. v. Forbes, 816 F.2d 1006 (5th Cir.1987); State v. Parker, 836 S.W.2d 930, 936 (Mo.1992); State v. Hampton, 163 S.W.3d 903, 904-05 (Mo.2005) ("If the court determines that a potential juror is stricken in violation of Batson, the remedy is to quash the strikes and permit those members of the venire stricken for discriminatory reasons to sit on the jury if they otherwise would").
[15] See, e.g., Chew v. State, 71 Md.App. 681, 704, 527 A.2d 332, 344 (1987), aff'd 317 Md. 233, 236, 562 A.2d 1270, 1271 (1989) ("[t]here is the lurking danger . . . than an unsuccessfully challenged juror may now bear an animus against the challenger arising from the challenge itself."); Jefferson, 595 So.2d at 39 (no danger of prejudice when the inquiry is conducted outside the venire's presence); McCollum, 433 S.E.2d at 159 ("To ask jurors who have been improperly excluded from a jury because of their race to then return to the jury to remain unaffected by that recent discrimination, and to render an impartial verdict without prejudice toward either the State or the defendant would be to ask them to discharge a duty which would require near superhuman effort and which would be extremely difficult for a person possessed of any sensitivity whatsoever to carry out successfully."); Walker, 453 N.W.2d at 135 n. 12. ("One factor the trial court should consider in selecting the appropriate remedy is whether the challenged juror is aware of the fact that he or she was challenged by the prosecutor. If the challenged juror is aware of the fact that he or she was challenged by the prosecutor, then that juror should not be reinstated because there is a substantial likelihood that he or she will have developed a bias against the prosecutor.").
[16] See, e.g., United States v. Ramirez-Martinez, 273 F.3d 903, 910 (9th Cir.2001) (found the trial court did not abuse its discretion in reseating illegally challenged jurors and returning those peremptory challenges to the government, noting the lack of malicious intent on the part of the prosecutor and the court's ability and duty to guarantee fair selection of a panel), overruled on other grounds, United States v. Lopez, 484 F.3d 1186 (9th Cir.2007) (en banc).
[17] See, e.g., United States v. Walker, 490 F.3d 1282, 1294-95 (11th Cir.2007) ("Other courts have refused to grant new peremptory strikes or to dismiss the venire following a Batson error, finding that doing so would reward offending conduct by the striking party"); United States v. Aleman, 246 Fed.Appx. 731, 735-36 (2nd Cir.2007); Peetz v. State, 180 S.W.3d 755, 761 (Tex.App.2005)("To hold that courts must restore the misused peremptory strikes is not only against the purpose of Batson, but also logically unsound. The United States Supreme Court sought to fulfill the purpose of the Fourteenth Amendment in guaranteeing equal protection by eliminating race as an acceptable factor in jury selection. Were we to accept appellant's rule, we would undermine Batson, for there would be no consequence for racially-motivated strikes. If a trial court refuses to restore misused strikes, litigants truly face a consequence and are less likely to engage in improper, racially-motivated behavior. Such a remedy, though not required, is acceptable.")
[18] A detailed colloquy between the court and defense counsel is set forth in the Unpublished Appendix.
[19] La. Const. art. 1, § 17 provides, in pertinent part:

(A) Jury Trial in Criminal Cases. A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict. The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law. Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury but no later than forty-five days prior to the trial date and the waiver shall be irrevocable.
[20] La. C. Cr. P. art. 799 provides, in pertinent part: "In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant."
[21] La. C. Cr. P. art. 799.1 provides: "Notwithstanding any other provision of law to the contrary, and specifically notwithstanding the provisions of Article 788, in the jury selection process, the state and the defendant may exercise all peremptory challenges available to each side, respectively, prior to the full complement of jurors being seated and before being sworn in by the court, and the state or the defendant may exercise any remaining peremptory challenge to one or more of the jurors previously accepted. No juror shall be sworn in until both parties agree on the jury composition or have exercised all challenges available to them, unless otherwise agreed to by the parties."