NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-956

STATE OF LOUISIANA

VERSUS

DARRELL DERONE SMALL

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C 22045
HONORABLE LALA BRITTAIN SYLVESTER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

SHANNON J. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Jonathan W. Perry, Judges.

CONVICTION AND SENTENCE AFFIRMED.

**Billy Joseph Harrington**
**Tenth Judicial District Attorney**
**Charles W. Seaman**
**Assistant District Attorney**
**P.O. Box 838**
**Natchitoches, LA 71458-0838**
**(318) 357-2214**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Chad M. Ikerd**
**Louisiana Appellate Project**
**P.O. Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Darrell Derone Small**

**GREMILLION, Judge.**

Defendant, Darrell Derone Small, appeals his conviction of one count of aggravated obstruction of a highway of commerce, a violation of La.R.S. 14:96. On the basis of this conviction, Defendant was adjudicated a habitual offender and sentenced to twenty-two years at hard labor, with credit for time served. The basis of Defendant's appeal is the trial court's denial of his challenge to the State's use of peremptory challenges that removed two of the five African-American venire members, which he claims violates the Equal Protection Clause of the Fourteenth Amendment under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986). For the reasons that follow, we affirm.

## FACTS

Defendant's case was tried before a six-person jury. Five potential jurors were African American: Mr. Gary Randall, Ms. Mary Ann Daniels, Mr. Desmond Peace, Mr. Mark Hamilton, and Ms. Wanda Jackson. Of those five, Ms. Jackson was never considered as a potential juror because the jury and an alternate had been selected before the parties considered Ms. Jackson. Defendant concedes that there existed ample race-neutral reasons to remove Mr. Randall. Mr. Hamilton served on the jury. Ms. Daniels and Mr. Peace, however, were peremptorily back-stricken by the State. The State only used three peremptory challenges, and all three were used to challenge African Americans. Defendant argues that, although the State gave "facially race-neutral" reasons for removing Ms. Daniels and Mr. Peace, the record indicates that those reasons were pretextual, as demonstrated by the fact that Caucasian jurors gave similar or identical answers and were accepted by the State.

### *Voir dire of Ms. Daniels*

During the opening phase of voir dire, the trial court asked several questions of the venire persons, including whether any immediate family members had been arrested

or convicted of any crime. Ms. Daniels indicated that her nephew had been arrested for murder the previous year. Ms. Daniels was not questioned further about this.

Ms. Denise Moore and Ms. Charity McKinney also indicated that family members had been charged with DWI charges. Both ended up serving on the jury. Mr. Gary Randall indicated that his wife and two brothers-in-law had been charged with crimes.

In response to an earlier question from the trial court about whether any of the potential jurors themselves had been arrested or convicted of any crime, Mr. Dustin Bennet responded that he had received a DWI charge. Mr. Bennett was seated as the alternate juror.

## *Voir dire of Mr. Desmond Peace*

As a hypothetical to test the potential jurors' understanding of the concept of legal intent, Defendant's trial counsel offered the following:

> MR. WILLIAMS : My wife has a white SUV and one of her good friends has a white SUV. It's not the same truck but it looks similar. Both of our children went to the same learning center, so my wife, when she dropped her off, when she dropped my kid off she came out her car was gone. Her friend took her car and drove it. Is she guilty of stealing a car?

To clarify, Defendant's counsel amended his hypothetical to assume that both women had left the engines of the vehicles running. When asked, Mr. Peace replied:

> MR. DESMOND PEACE:      I say no.
>
> MR. WILLIAMS:      Why you say no?
>
> MR. DESMOND PEACE      If she brought it back and ya'll [sic] got an understanding about it.

Mr. Peace was also questioned to gauge his understanding of the burden of proof required of the State. In response to such questioning he replied that his understanding was that the State was required to present "proof without a reasonable doubt." During questioning by Defendant's counsel, Mr. Peace was asked about whether he could vote

2

to convict if the state proved every element of the crime except one, and Mr. Peace answered that he could not because "he gave me a reason to doubt, to doubt one."

Prior to a six-member panel being selected, Defendant objected to the State's use of peremptory challenges on the basis of *Batson*, 106 S.Ct. 1712, because all three peremptory challenges used by the State were exercised to challenge African Americans, Ms. Daniels, Mr. Randall, and Mr. Peace. The trial court asked the State to respond to the challenge, to which the State objected because, it argued, Defendant had not made a prima facie showing under *Batson*. Nevertheless, the State articulated a race-neutral reason for challenging Ms. Daniels, the recent murder charge or conviction of her nephew. Defendant conceded that the State had sufficient race-neutral reasons to challenge Mr. Randall, and the challenge to Mr. Randall is not at issue in this case. Renewing its contention that Defendant had not made a prima facie showing for *Batson* purposes, the State articulated that, while discussing the switched-car hypothetical, Mr. Peace talked about "any reason to doubt."

Defendant argued that the stated reason for challenging Ms. Daniels was pretextual, based upon the fact that the State did not question her at all on how her relationship with her nephew might affect her ability to fairly judge the case. Defendant also argued that the stated reasons for challenging Mr. Peace were pretextual, based upon the State's extensive voir dire of him and the intelligent answers Mr. Peace gave.

The trial court denied Defendant's *Batson* objection. Following the trial, Defendant was convicted, and this appeal ensued. In his sole assignment of error, Defendant contends that the trial court erred in not maintaining his objection under *Batson*.

## ANALYSIS

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

3

In *State v. Nelson*, 10-1724, 10-1726, p. 9 (La. 3/13/12), 85 So.3d 21, 28-29, the supreme court noted:

> The Court in *Batson* outlined a three-step test for determining whether a peremptory challenge was based on race. Under *Batson* and its progeny, the opponent of a peremptory strike must first establish a prima facie case of purposeful discrimination. Second, if a prima facie showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. Third, the trial court then must determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination.

Defendant contends that he made a prima facie showing, shifting the burden to the State to offer racially neutral reasoning for its challenges. In brief, the State opted not to defend its proffered reasons for its strikes, but contended that, while the court asked for race-neutral reasons, it did not find that Defendant met his burden on the first step of the *Batson* analysis. In *State v. Broussard*, 16-1836, pp. 3-4 (La. 1/30/18), ___ So.3d ___, the Louisiana Supreme Court noted:

> In addition, the Supreme Court has found, "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991).

Accordingly, because the State gave race-neutral reasons for its selections, whether Defendant established a prima facie showing is moot, and this court must review step three of the *Batson* analysis.

The trial court clearly rejected Defendant's argument that the State's race-neutral explanations were pretextual because the *Batson* objection was denied after that argument was presented. Having ruled that the State had offered valid race-neutral reasons for removing Mr. Peace and Ms. Daniels from the jury, the remaining step of the *Batson* analysis was for the trial court to "determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination." *Nelson*, 85 So.3d at 29.

In *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S.Ct. 1203, 1207-08 (2008), the Supreme Court noted:

> On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. See *Hernandez v. New York,* 500 U.S. 352, 369, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion); *id.,* at 372, 111 S.Ct. 1859 (O'Connor, J., joined by SCALIA, J., concurring in judgment). The trial court has a pivotal role in evaluating *Batson* claims. Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility, see 476 U.S., at 98, n. 21, 106 S.Ct. 1712, and "the best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge," *Hernandez,* 500 U.S., at 365, 111 S.Ct. 1859 (plurality opinion). In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.,* nervousness, inattention), making the trial court's firsthand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. We have recognized that these determinations of credibility and demeanor lie " 'peculiarly within a trial judge's province,' " *ibid.* (quoting *Wainwright v. Witt,* 469 U.S. 412, 428, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985)), and we have stated that "in the absence of exceptional circumstances, we would defer to [the trial court]," 500 U.S., at 366, 111 S.Ct. 1859 (plurality opinion).

Defendant gave his explanation of why he believed the State's reasons were pretextual and thus invalid. The trial court then denied the challenges, implicitly ruling that Defendant failed to carry "the ultimate burden of proving purposeful discrimination." *Nelson*, 85 So.3d at 29.

Defendant contends that Mr. Peace's response to the car hypothetical showed a belief "that a mistake had taken place and there was no demonstration of intent." This reads into Mr. Peace's response an understanding that was not necessarily present. Mr. Peace's actual response when asked if the wife's friend should be charged with a felony was that she should not "[i]f she brought it back and ya'll [sic] got an understanding about it." Mr. Peace's answer is more in line with Ms. Denise Moore's, who answered that the friend would not be charged "because you and your wife aren't going to press charges[.]"

5

Finally, Defendant argues the State misrepresented Mr. Peace's testimony regarding burden of proof by claiming Mr. Peace was confused about the burden of proof being beyond a reasonable doubt. The cold record does reflect that Mr. Peace articulated the State's burden of "proof without a reasonable doubt." The State argued that Mr. Peace articulated the standard as "without a reason to doubt," and the same cold record also shows Mr. Peace employing the phrase, "a reason to doubt." The trial court rejected the *Batson* objection, which means that it found that Defendant failed to carry his burden of showing purposeful discrimination. We give great deference to a trial court's findings in this regard. *See State v. Elie*, 05-1569 (La. 7/10/06), 936 So.2d 791. We cannot find that the trial court erred in denying Defendant's *Batson* objection regarding the challenge of Mr. Peace.

The State asserted that it challenged Ms. Daniels because her nephew had been arrested or convicted of murder. Defendant argues that, because the State did not conduct voir dire on the issue, the challenge must have been pretextual. Further, Defendant argues, the pretextual nature of the challenge of Ms. Daniels is reinforced by the fact that two white venirepersons, Ms. Charity McKinney and Ms. Denise Moore, both had immediate family members with prior convictions for DWI but were accepted by the State to serve on the jury. We cannot conclude that the trial court's denial of Defendant's *Batson* objection was erroneous. The State may have chosen to not conduct more extensive voir dire of Ms. Daniels because family members of defendants charged with murder have, in the State's opinion, proven hostile to the prosecution and are excluded as a matter of course. This would not be prohibited; it is a race-neutral reason to exercise a peremptory challenge. Defendant bears the burden under *Batson* to prove purposeful discrimination in the exercise of a peremptory challenge. This burden is not carried by pointing out that two jurors had family members with

misdemeanors while a challenged venireperson's family member was charged with a capital offense.

## DECREE

Defendant's conviction and sentence are affirmed.

**CONVICTION AND SENTENCE AFFIRMED.**

Not designated for Publication.

7