TERRI F. LOVE, Judge.
11 This appeal arises from the convictions and sentence of the defendant for one count of attempted possession of a firearm by a felon and one count of attempted simple escape. The defendant asserts that the trial court erred by denying a Batson challenge and in allowing alleged improper statements during closing and rebuttal arguments. We find that the trial court did not err in finding the State’s race-neutral reasoning for striking the potential juror was valid. We also find that the trial court did not err in overruling defense counsels’ objections to the State’s closing argument and rebuttal. Therefore, we affirm the defendant’s convictions and sentence.

PROCEDURAL HISTORY

Delbert Celestine[1] was charged by bill of information with one count of possession of a firearm by a felon pursuant to La. R.S. 14:95.1 (count one) and one count of simple escape pursuant to La. R.S. 14:110 (count two). He pled not guilty to both counts.
Mr. Celestine filed motions to suppress evidence, which the trial court denied. The trial court found probable cause to *950 substantiate the charges. The trial court also denied Mr. Celestine’s Motion to Sever.
li»A twelve-person jury unanimously found Mr. Celestine guilty of attempted possession of a firearm by a felon and attempted simple escape.
The State filed a multiple offender bill of information charging Mr. Celestine as a second offender on the attempted possession of a firearm charge. A separate multiple bill charging Mr. Celestine as a third felony offender was filed relating to the attempted simple escape charge.
Mr. Celestine filed a Motion for a New Trial and a Motion for Discovery concerning the multiple bills of information. The trial court denied Mr. Celestine’s Motion for New Trial. Mr. Celestine waived all sentencing delays. The trial court then held a hearing on the multiple bill, after which it adjudicated Mr. Celestine as a double offender as to the attempted possession of a firearm charge and as a third felony offender as to the attempted simple escape charge. The trial court denied Mr. Celestine’s Motion for a New Trial as to the multiple bill and sentenced him to serve fifteen years at hard labor without benefit of parole, probation, or suspension of sentence as to the attempted possession of a firearm charge and forty months at hard labor as to the attempted simple escape charge, the sentences to be served consecutively. Mr. Celestine’s appeal followed.

OFFICER DARYLE HOLLOWAY’S TESTIMONY

Officer Daryle Holloway, a nineteen-year veteran of the New Orleans Police Department (“NOPD”), testified that, while assigned to the NOPD Fifth District Night Watch, he responded to a call of “shots fired” at The Sports View Night Club (“Club”) located at 1701 Elysian Fields Avenue, at 1:40 am. Officer Holloway identified photographs of the 1600 and 1700 blocks of Elysian Fields Avenue, and of the sports bar.
Officer Holloway was the first NOPD officer on the scene and observed ajjlarge number of people at the scene, which he described as chaotic. Security guards at the Club informed him that some individuals were fighting and left the Club in a silver Malibu with a Texas license plate. Officer Holloway was directed to the vehicle in question at the intersection of Elysian Fields and Derbigny. The vehicle was stopped in the middle of the neutral ground. Officer Holloway and Officer Phil Burras approached the vehicle and, due to the nature of the call, Officer Holloway drew his weapon. The driver, Jasmine Tolbert, was observed bleeding from his face. The three occupants of the vehicle were ordered to show their hands, and Mr. Tolbert was removed from the vehicle first. Mr. Ceiestine was sitting in the back seat of the vehicle and was observed with his hands in the air and a green shirt on his lap.
Officer Holloway then heard Officer Burras yell “get down.” Officer Holloway saw Officer Burras with a Mac-11 machine pistol in his hands. Officer Holloway then observed Mr. Celestine sliding the green shirt off of his lap, which fell to the floor of the vehicle with a thump.[2] Officer Holloway discovered that the object that fell from Mr. Celestine’s lap was a firearm. Officer Holloway secured Mr. Celestine, while Officer Burras secured the third occupant of the vehicle, who stated that his *951 name was Sidney Patterson.[3] Although Mr. Tolbert ran, he was recaptured. Mr. Celestine and the other two occupants of the vehicle were taken to University Hospital.
Officer Holloway did not obtain statements from any of the witnesses at the crime scene, and did not fingerprint the confiscated firearm. Officer Holloway did not seize the green shirt from the backseat of the vehicle. He photographed neither |4the vehicle nor the green shirt.

OFFICER PHIL BURRAS’ TESTIMONY

When Officer Burras arrived at the scene, Officer Holloway was on site speaking with security. After being advised of the type of vehicle in which the suspects fled, the officers found the vehicle at the corner of Elysian Fields and North Der-bigny. While Officer Holloway approached the driver, Officer Burras approached the passenger side of the car, where Mr. Nora was seated in the front passenger seat. Officer Burras ordered Mr. Nora from the vehicle and onto the ground, at which time he heard a metal object hit the ground. Officer Burras seized a Mac-11 from Mr. Nora’s waistband. He handcuffed Mr. Nora, and that’s when Mr. Tolbert fled. Officer Burras chased and captured Mr. Tolbert. All three occupants of the vehicle were arrested, and then transported to University Hospital. After taking all three suspects to a secured waiting area, Officer Burras observed Mr. Celestine run towards the exit door, but the door would not open.

OFFICER CALVIN BANKS’ TESTIMONY

Officer Calvin Banks responded to the scene and transported Mr. Celestine to University Hospital. Officer Banks believed that Mr. Celestine sustained injuries from a fight that occurred at the Club. Once beyond the security doors at the hospital, Mr. Celestine became rigid, fell to the floor, and jumped up and ran to the door. However, Mr. Celestine was unable to open the door because his hands were cuffed behind his back. Officer Banks detained Mr. Celestine again and escorted him to the examining room.

ERRORS PATENT

A review of errors patent reveals that the trial court correctly did not impose a fine on the attempted possession of a firearm charge because Mr. Celestine was | ¡¡sentenced as a multiple offender. See State v. Dickerson, 584 So.2d 1140 (La.1991). Although the trial court did not specify that the attempted simple escape sentence be served without benefit of probation or suspension of sentence as required by La. R.S. 15:529.1G, the trial court did not suspend the sentence or place him on probation. However, these prohibitions are deemed to have been imposed. See La. R.S. 15:301.1A and State v. Williams, 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799.

BATSON CHALLENGE

Mr. Celestine contends that the trial court erred by denying his Batson challenge to the State’s use of peremptory challenges. Specifically, he asserts that the State did not set forth a sufficient race-neutral reason for challenging Juror Ramsey.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court held that a prosecutor’s use of peremptory challenges to strike potential jurors on the basis of their race violates the Equal Pro *952 tection Clause. The dictates of Batson are codified in La.C.Cr.P. art. 795.[4]
In State v. Nelson, 10-1724, 10-1726, p. 9 (La.3/13/12), 85 So.3d 21, 28-9, the Louisiana Supreme Court adopted the three-step procedure outlined in Batson that a trial court is to use when a party claims that the other party has used peremptory challenges based on race:
Under Batson and its progeny, the opponent of a | (¡peremptory strike must first establish a prima facie case of purposeful discrimination. Second, if a pri-ma facie showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. Third, the trial court then must determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination. Batson, 476 U.S. at 94-98, 106 S.Ct. 1712. See also, Johnson v. California, 545 U.S. 162, 168, 125 S.Ct. 2410, 2416, 162 L.Ed.2d 129 (2005); State v. Sparks, 1988-0017 (La.5/11/11), 68 So.3d 435, 468; State v. Givens, 99-3518 (La.1/17/01), 776 So.2d 443, 448.
The Court explained that in order to establish a prima facie case, the objecting party must show: “(1) the striking party’s challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the peremptory was used to strike the venireperson on account of his being a member of that cognizable group.” Id., 10-1724, 10-1726, pp. 9-10, 85 So.3d at 29. Once the objecting party has met these requirements, the burden then shifts to the party who made the challenges to show race-neutral reasons for the challenges. Id., 10-1724, 10-1726, p. 10, 85 So.3d at 29. As noted in Nelson;
To rebut a prima facie showing of intentional discrimination, the proponent of a peremptory challenge must offer a race-neutral explanation. Batson, 476 U.S. at 97, 106 S.Ct. 1712. See also, Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008); Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995). This explanation does not have to be persuasive, or even plausible, but must be more than a mere affirmation of good faith or assumption that the challenged juror would be “partial to the defendant because of their shared race.” Purkett, 514 U.S. at 768, 115 S.Ct. 1769; Hernandez [v. New York], 500 U.S. [352] at 360, 111 S.Ct. 1859 [114 L.Ed.2d 395 (1991)]; Batson, 476 U.S. at 97, 106 S.Ct. 1712. At the second step of the Batson inquiry, the issue is the facial validity of the striking party’s explanation. Purkett, 514 U.S. at 768, 115 S.Ct. 1769; Hernandez, 500 U.S. at 360, 111 S.Ct. 1859; Sparks, 68 So.3d at 474. Unless a discriminatory 17intent is inherent in the striking party’s explanation, the reason offered will be deemed race-neutral. Id.
10-1724, 10-1726, p. 11, 85 So.3d at 30.
In the third step, “the court must then determine whether the objecting party has carried his burden of proving pur *953 poseful discrimination.” Id., 10-1724, 10-1726, p. 15, 85 So.3d at 32. The “final step involves evaluating ‘the persuasiveness of the justification’ proffered by the striking party, but ‘the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.’ ” Nelson, 10-1724, 10-1726, p. 15, 85 So.3d at 32, quoting Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). “ ‘[I]t is not until the third step that the persuasiveness of the justification becomes relevant-the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.’ ” Id.
After the first round of voir dire, the State exercised four peremptory challenges, all against potential African-American jurors. Counsel for Mr. Nora[5] initially raised a Batson challenge, and asked the State to provide race-neutral reasons for its peremptory challenges. Without waiting for the trial court to find that the defense made a prima facie case, the prosecutor gave reasons for striking each of the four jurors. The fact that the trial court did not find a prima facie showing is irrelevant; as noted in Nelson, once the party making the peremptory challenges provides race-neutral reasons, the issue of a prima facie showing is moot. 10-1724, 10-1726, p. 10, 85 So.3d at 29.
With respect to its peremptory challenges, the prosecutor noted that one | ^potential juror was not paying attention during voir dire; one said she believed that people needed guns to protect themselves, and the prosecutor thought she may be biased against the State if one of the defendants raised this as a defense; one “was all over the place,” seeming to require each witnesses’ testimony to be exactly the same as other witnesses; and one adamantly agreed with defense counsel that the defendants need not testify, and she rolled her eyes during the discussion of this issue during voir dire (Juror Ramsey). The trial court found that the State had provided racially-neutral reasons for the peremptory challenges. The trial court then noted that the State had stricken only four jurors out of twenty-one potential jurors, and the trial court denied the Batson claim. Counsel for Mr. Nora objected to the trial court’s denial of the Batson challenge, asserting that, as to Juror Ramsey, she was merely indicating her willingness to follow the law.
Although counsel for Mr. Nora objected to the denial of the Batson challenge, La. C.Cr.P. art. 842 provides that “[i]f an objection has been made when more than one defendant is on trial, it shall be presumed, unless the contrary appears, that the objection has been made by all the defendants.” Mr. Celestine’s counsel did not exclude Mr. Celestine from the objection regarding the Batson challenge. Therefore, Mr. Celestine properly preserved the argument for appeal.
Mr. Celestine avers that the trial court erred in its ruling only as to Juror Ramsey. Mr. Celestine contends that the reasons supplied by the prosecutor were not race-neutral, and he asserts that once the State gave its reasons, the trial court failed to conduct step three of the Batson analysis to determine if the reasons supplied were indeed race-neutral.
Juror Ramsey agreed with Mr. Celes-tine’s counsel’s statement that the defendants need not testify at trial. Mr. Celes-tine contends that this statement is a l9correct interpretation of the law, and if this was not a pre-textual reason, then the State would have had a basis to strike *954 every juror who could follow the law. However, Juror Ramsey’s “adamant” agreement with the statement, not the fact that she agreed with it, could be an indicator that she would be more inclined to side with the defense than the State. The prosecutor also stated that Juror Ramsey rolled her eyes[6] during the voir dire discussion of the defendants’ right not to testify. Mr. Celestine asserts that the trial court erred by finding that this was a race-neutral reason.
As noted in Nelson, the race-neutral reason given is valid “[ujnless a discriminatory intent is inherent.” 10-1724, 10-1726, p. 11, 85 So.3d at 30. Juror Ramsey’s actions could be an indicator that she would favor the defense and the reasoning provided by the State was not inherently discriminatory. Therefore, the trial court did not abuse its discretion by finding the State’s reasoning to be race-neutral.

CLOSING ARGUMENTS

Mr. Celestine asserts that the trial court erred by overruling his objections to improper argument by the State during rebuttal argument that was based on alleged personal attacks against defense counsel that allegedly bolstered the credibility of the NOPD witnesses.
As per La.C.Cr.P. art. 774, the scope of closing argument “shall be confined to the evidence admitted, to the lack of evidence, to conclusions of fact that the | instate or defendant may draw therefrom, and to the law applicable to the case.” La.C.Cr.P. art. 774 further provides that closing argument “shall not appeal to prejudice,” and the State’s rebuttal argument “shall be confined to answering the argument of the defendant.” A prosecutor “should refrain from making personal attacks on defense strategy and counsel.” State v. Manning, 03-1982, p. 75 (La.10/19/04), 885 So.2d 1044, 1108. While jurisprudence has found that prosecutors may not refer to “personal experience or turn” their “argument into a plebiscite on crime,” nonetheless prosecutors have “wide latitude in choosing closing argument tactics.” State v. Clark, 01-2087, p. 15 (La.App. 4 Cir. 9/25/02), 828 So.2d 1173, 1183.
As noted by this Court in State v. Jones, 10-0018, p. 9 (La.App. 4 Cir. 11/10/10), 51 So.3d 827, 833:
Even where a prosecutor’s argument has exceeded the scope of art. 774 or is deemed to be improper, a reviewing court should credit the good sense and fairmindedness of the jurors who have heard the evidence. State v. Williams, 96-1023 (La.1/21/98), 708 So.2d 703; Clark, State v. Ricard, 98-2278, 99-0424 (La.App. 4 Cir. 1/19/00), 751 So.2d 393. In addition, “a reviewing court will not reverse a conviction unless ‘thoroughly convinced’ that the argument influenced the jury and contributed to the verdict.” Clark, at p. 15, 828 So.2d at 1173. See also State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 583; [State v.]Casey, supra [1999-0023 (La.1/26/00), 775 So.2d 1022]; State v. Wiltz, 2008-1441 (La.App. 4 Cir. 12/16/09), 28 So.3d 554. As the Court noted in Draughn: “Mistrial is a drastic remedy, and the determination of whether prejudice to the defendant has resulted from the prosecutor’s comments lies in the sound dis *955 cretion of the trial judge. State v. Leonard, 2005-1382, p. 11 (La.6/16/06), 932 So.2d 660, 667. Moreover, a trial judge has broad discretion in controlling the scope of closing argument. State v. Prestridge, 399 So.2d 564, 580 (La.1981).” Draughn, 950 So.2d at 614.
Mr. Celestine avers that several statements the prosecutor made during Inrebuttal argument bolstered the NOPD officers’ credibility and cast aspersions on his defense counsel for attempting to impeach the NOPD officers. However, neither defense counsel objected to the later statements. See La.C.Cr.P. art. 842. A defendant must make a contemporaneous objection in order to preserve an alleged error for review. State v. Carter, 589 So.2d 1212, 1214 (La.App. 4th Cir.1991). La.C.Cr.P. art. 841 provides that no “irregularity” may be considered unless the party objects to it at the time of occurrence. As noted by this Court in State v. Taylor, 91-2496, p. 5 (La.App. 4 Cir. 3/29/94), 635 So.2d 416, 420, “[t]he contemporaneous objection rule exists, not only so that a trial judge may correct the error at the time it is made, but it also serves notice in the record that the complained of conduct was so noticeable as to create prejudice in the minds of the jurors.” Thus, Mr. Celestine failed to preserve any argument as to the later statements made by the prosecutor to which he failed to object, and he cannot raise any claim on appeal.
The remainder of the statements, to which Mr. Celestine’s counsel objected and which are preserved for appeal, were made in response to the arguments made by counsel for Mr. Celestine and his code-fendant, Mr. Nora.[7] Mr. Celestine’s counsel questioned Officer Holloway about the arrest credits that he and Officer Burras received in connection with the arrests of Mr. Celestine. Officer Holloway stated that police districts were rated on the number of arrest credits. Mr. Celestine’s counsel questioned why the green shirt, inside of which the firearm on Mr. Celes-tine’s lap was allegedly concealed, was not seized. Mr. Celestine’s [ ^counsel also commented on the NOPD officers’ policy of having each other’s “backs.”
During closing argument, Mr. Celes-tine’s counsel discussed that the NOPD officers did not seize the green shirt. She emphasized that there was no physical evidence linking Mr. Celestine to a firearm. Mr. Celestine’s counsel noted that the police report did not contain information regarding the “thud” that the NOPD officers allegedly heard, which alerted them to the firearm in the back seat near Mr. Celes-tine. She postulated that the NOPD officers invented the story that Mr. Celestine had the firearm in his lap in order to support the arrest of Mr. Celestine. Mr. Celestine’s counsel also mentioned the arrest points that Officer Holloway testified NOPD officers received for each arrest, arguing that the NOPD officers arrested Mr. Celestine in order to boost the total. She theorized that the NOPD officers arrested everyone in the vehicle so the arres-tees’ credibility would be compromised if they took the stand and disputed the NOPD officers’ testimony. Mr. Celestine’s counsel maintained that the inconsistencies in the NOPD officers’ testimony were due to the NOPD officers attempting to tailor their testimony to support each other.
Mr. Nora’s defense counsel reiterated some of this argument, insisting that the NOPD officers concocted the story of the *956 firearm in Mr. Celestine’s lap in order to justify the arrest of the defendants. Mr. Nora’s counsel stated: “This is again, one of the thing, same thing all over again. I’ve heard it so many times in the media. Federal court [sic] officers covering up. This is just similar. And, how do you know that, because the three of them, well especially the two of them, couldn’t keep their stories straight.” Mr. Nora’s counsel also referred to Officer Burras laughing when she asked him why the “thud” was not included in the police |13report. She stated: “He thinks this is a joke. It’s not a joke. It’s not a joke at all.”
On rebuttal, the prosecutor argued that the closing argument by defense counsel for both defendants was an attack on the NOPD officers’ veracity. The prosecutor stated: “Marcus Aurelius, some may know, had a quote. He was also a lawyer. And his quote was this, “When you have nothing else let them blame the victim.’ They have nothing else. So what do they do? They turn to the age old — or at least in this building — blame the cops.” Counsel for Mr. Celestine objected on the basis that the comments were a personal attack on defense counsel. The trial court overruled the objection, and the prosecutor continued:
And you listen to them. And you listen to [counsel for the codefendant] say the media. And they said federal court, and, you know, the cops lie. Oh, come on. What is she trying to do? She’s trying to do what her [sic] and [the appellant’s counsel] have been doing throughout this trial, blame and then pander to you, pander to you twelve jurors. And it’s been obvious. You heard the little semantics played that I had to object to during voir dire, “beyond all reasonable doubt.”
When you listen to those instructions and Judge is going to read when I sit down, listen to if that’s in there. Listen to the differences of statements that you hear. They’ve been pandering and they sit and they want to invoke the federal court just to try to inflame you.
Ladies and gentlemen, federal court has nothing to do with this. And I asked you all during the course of voir dire can you judge each person individually as to their credibility when they take that witness stand. These gentlemen took this witness stand. Officer Holloway, a nineteen year veteran [of the] New Orleans Police Department. You heard — and they didn’t want it to come out — that how much longer do you have? “I want to retire.” He’s not here for this grand conspiracy of arrest credits. This man works from 11:00 to 7:00 all over the Fifth District. Do you think he’s out there after nineteen years looking for a promotion.
Mr. Celestine’s counsel objected, asserting that the prosecutor was bolstering the ^^credibility of the NOPD officers. The trial court overruled the objection.
Mr. Celestine asserts that this argument was improper because it constituted a personal attack on his defense counsel and bolstered the NOPD officers’ credibility. With respect to “bolstering” the NOPD officers’ credibility, Mr. Celestine’s counsel argued to the jury that the NOPD officers were unworthy of belief. Mr. Nora’s counsel invoked notorious, unrelated federal cases where NOPD officers lied. Thus, the prosecutor’s argument with respect to the credibility of the NOPD officers and their lack of reason to lie directly fell within the scope of rebuttal argument under La.C.Cr.P. art. 774. “Argument on the credibility of a witness is proper where the facts bearing on the witness’ credibility appear in the record.” State v. Sayles, 395 So.2d 695, 697 (La.1981). In State v. *957 Smith, 554 So.2d 676, 681 (La.1989)[8], the Court stated:
[I]t has consistently been held to be reversible error for the prosecutor to express his belief in the guilt of the accused, or the credibility of a key witness, where doing so implies that he has additional knowledge or information about the case which has not been disclosed to the jury. State v. Kaufman, supra [304 So.2d 300 (La.1974)]; State v. Harrison, 367 So.2d 1 (La.1979); State v. Hamilton, 356 So.2d 1360 (La.1978); State v. May, 339 So.2d 764 (La.1976) (recognizing the stated rule but finding that the prosecutor’s comment did not imply to the jury that he had personal knowledge of facts not presented to them indicating the defendant’s guilt).
Mr. Celestine contends that the comments about both defense counsel “pandering” to the jury by accusing the NOPD officers of lying and discussing unrelated federal cases involving untruthful police officers constituted personal attacks. Mr. Celestine asserts that the alleged personal attacks on his counsel 11sdeprived him of a fair trial.
Most of the comments concerning Mr. Celestine’s counsel were pointing out both counsel for Mr. Celestine and counsel for Mr. Nora’s attempts to shift the focus from the defendants to the NOPD officers. Crediting the common sense and fair-mindedness of the jury, we do not find that the use of the word “pandering” by the prosecutor improperly influenced the jury and contributed to the verdict. Therefore, we find that the trial court did not err in overruling objections to the State’s closing argument and affirm.

DECREE

For the above-mentioned reasons, we find that the trial court did not abuse its discretion in denying the Batson challenge regarding Juror Ramsey or overruling objections to the State’s remarks during closing arguments and rebuttal. Therefore, we affirm Mr. Celestine’s convictions and sentence.
AFFIRMED.

. Karell Nora a/k/a Steven Patterson was also charged with one count of possession of a firearm by a felon. He was found guilty and sentenced to serve twenty years at hard labor.

. Officer Holloway stated that no mention of the firearm making a sound as it hit the floor of the vehicle was contained in the police report.

. Sidney Patterson’s legal name is Karrell Nora.

. La.C.Cr.P. art. 795 states in pertinent part: C. No peremptory challenge made by the state or the defendant shall be based solely upon the race or gender of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race or gender, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory race or gender neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.

. Mr. Nora and Mr. Celestine were tried to- gether as codefendants.

. During the second round of voir dire, the State raised a reverse-Batson claim against counsel for Mr. Nora, the same counsel who raised the Batson claim against the State. In giving her reasons for striking one of the jurors, counsel noted that that juror kept rolling her eyes. The trial court found that this reason was race-neutral. Therefore, this reason cannot be race-based for one party and race-neutral for the other party.

. The closing arguments made by both Mr. Celestine's counsel and Mr. Nora's counsel must be examined because the State’s rebuttal remarks were made in response to the closing arguments in toto.

. Smith was overruled on other grounds regarding the ability of the Court to consider assignments of error in death cases in the absence of a contemporaneous objection in State v. Taylor, 93-2201 (La.2/28/96), 669 So.2d 364.