TERRI F. LOVE, Judge.
_JjThe defendant seeks review of his conviction for possession of a firearm by a convicted felon and his sentence as a multiple offender. The defendant contends that the trial court erred in denying his Batson challenge, denying his Motion to Sever or denying the Motion for Mistrial, and for not ruling on his Motion for New Trial. We find that the State of Louisiana provided race-neutral reasoning for striking the juror. Therefore, the trial court did not err in denying the defendant’s Batson challenge. We also find that the defendant was not entitled to a severance. However, because the trial court failed to rule on the defendant’s Motion for New Trial prior to imposing his sentence, we vacate the sentence and remand for resen-tencing as a second offender.

PROCEDURAL HISTORY

The State of Louisiana charged Karrell Nora, a/k/a Steven Patterson, with being a convicted felon in possession of a firearm.[1] He subsequently pled not guilty. The trial court denied his Motion to Suppress the Evidence and found ^probable cause to hold him for trial. The trial court then denied the Motion to Sever Mr. Nora’s trial from that of his co-defendant, Mr. Celestine. After a two-day trial, a twelve-person jury found Mr. Nora guilty as charged. He filed a Motion for New Trial and in Arrest of Judgment. The State filed a multiple bill. The trial court sentenced Mr. Nora to serve twenty years at hard labor without benefit of parole, probation, or suspension of sentence. After Mr. Nora pled guilty to being a second offender, the trial court vacated the original sentence and sentenced Mr. Nora as a second offender to serve twenty-five years at hard labor, to run concurrently to the sentence he received in return for his guilty plea to armed robbery in case 507-039.[2]
*1240 Because the trial court never ruled on Mr. Nora’s Motion in Arrest of Judgment or Motion for New Trial, this Court remanded the case to the trial court for a ruling. The docketmaster reflects that the trial court denied Mr. Nora’s Motion in Arrest of Judgment/Motion for New Trial on December 2, 2013, in compliance with this Court’s November 12, 2013 order.

FACTUAL BACKGROUND

The following summary of the facts adduced at trial is taken from this Court’s opinion in the appeal of his co-defendant, Mr. Celestine, who was tried and convicted with Mr. Nora.

OFFICER DARYLE HOLLOWAY’S TESTIMONY

Officer Daryle Holloway, a nineteen-year veteran of the New Orleans Police Department (“NOPD”), testified Rthat, while assigned to the NOPD Fifth District Night Watch, he responded to a call of “shots fired” at The Sports View Night Club (“Club”) located at 1701 Elysian Fields Avenue, at 1:40 am. Officer Holloway identified photographs of the 1600 and 1700 blocks of Elysian Fields Avenue, and of the sports bar.
Officer Holloway was the first NOPD officer on the scene and observed a large number of people at the scene, which he described as chaotic. Security guards at the Club informed him that some individuals were fighting and left the Club in a silver Malibu with a Texas license plate. Officer Holloway was directed to the vehicle in question at the intersection of Elysian Fields and Der-bigny. The vehicle was stopped in the middle of the neutral ground. Officer Holloway and Officer Phil Burras approached the vehicle and, due to the nature of the call, Officer Holloway drew his weapon. The driver, Jasmine Tol-bert, was observed bleeding from his face. The three occupants of the vehicle were ordered to show their hands, and Mr. Tolbert was removed from the vehicle first. Mr. Celestine was sitting in the back seat of the vehicle and was observed with his hands in the air and a green shirt on his lap.
Officer Holloway then heard Officer Burras yell “get down.” Officer Holloway saw Officer Burras with a Mac-11 machine pistol in his hands. Officer Holloway then observed Mr. Celestine sliding the green shirt off of his lap, which fell to the floor of the vehicle with a thump. Officer Holloway discovered that the object that fell from Mr. Celes-tinas lap was a firearm. Officer Holloway secured Mr. Celestine, while Officer Burras secured the third occupant of the vehicle, who stated that his name was [Steven] Patterson.[3] Although Mr. Tol-bert ran, he was recaptured. Mr. Celes-tine and the other two occupants of the vehicle were taken to University Hospital.
*1241 Officer Holloway did not obtain statements from any of the witnesses at the crime scene, and did not fingerprint the confiscated firearm. Officer Holloway did not seize the green shirt from the backseat of the vehicle. He photographed neither the vehicle nor the green shirt.
| OFFICER PHIL BURRAS’ TESTIMONY
When Officer Burras arrived at the scene, Officer Holloway was on site speaking with security. After being advised of the type of vehicle in which the suspects fled, the officers found the vehicle at the corner of Elysian Fields and North Derbigny. While Officer Holloway approached the driver, Officer Bur-ras approached the passenger side of the car, where Mr. Nora was seated in the front passenger seat. Officer Bur-ras ordered Mr. Nora from the vehicle and onto the ground, at which time he heard a metal object hit the ground. Officer Burras seized a Mac-11 from Mr. Nora’s waistband. He handcuffed Mr. Nora, and that’s when Mr. Tolbert fled. Officer Burras chased and captured Mr. Tolbert. All three occupants of the vehicle were arrested, and then transported to University Hospital. After taking all three suspects to a secured waiting area, Officer Burras observed Mr. Celestine run towards the exit door, but the door would not open.

OFFICER CALVIN BANKS’ TESTIMONY

Officer Calvin Banks responded to the scene and transported Mr. Celestine to University Hospital. Officer Banks believed that Mr. Celestine sustained injuries from a fight that occurred at the Club. Once beyond the security doors at the hospital, Mr. Celestine became rigid, fell to the floor, and jumped up and ran to the door. However, Mr. Celestine was unable to open the door because his hands were cuffed behind his back. Officer Banks detained Mr. Celestine again and escorted him to the examining room.
State v. Celestine, 12-1541, pp. 2-4 (La.App. 4 Cir. 12/18/13), 131 So.3d 947, 950-951, Officer Burras extricated Mr. Nora from the car and placed him on the ground. The parties stipulated that Mr. Nora previously pled guilty in an earlier case to possession of cocaine and possession of marijuana, third offense, and both of these sentences were imposed within ten years of Mr. Nora’s arrest in the present case.

ERRORS PATENT/MOTION FOR NEW TRIAL

A review of the record reveals two errors, one of which is assigned by Mr. Nora. In his assigned error, Mr. Nora notes that although he filed a Motion for |fiNew Trial/In Arrest of Judgment, the trial court failed to rule on the motion prior to imposing sentence.
La.C.Cr.P. art. 853 provides that a motion for new trial based upon all grounds except newly-discovered evidence must be filed and disposed of prior to sentencing. (Emphasis added). This Court held that sentencing prior to ruling on a motion for new trial requires that the sentence be vacated and the matter remanded for ruling on the outstanding motion and for resentencing. See State v. Boyd, 11-1129, p. 7 (La.App. 4 Cir. 11/21/12), 104 So.3d 642, 646; State v. Booth, 98-2065 (La.App. 4 Cir. 10/20/99), 745 So.2d 737, 743.
This Court remanded the present matter to the trial court, which denied the *1242 Motion for New Trial and Motion in Arrest of Judgment on December 2, 2013. However, Mr. Nora’s sentence was imposed prior to the trial court’s ruling. Therefore, Mr. Nora’s sentence must be vacated and the matter remanded for resentencing as a second offender.
Secondly, although the trial court imposed Mr. Nora’s original sentence without benefit of parole, probation, or suspension of sentence, in accordance with La. R.S. 14:95.1, it vacated this sentence when Mr. Nora pled guilty. The sentencing transcript reflects that the trial court failed to prohibit eligibility for parole, probation, or suspension of sentence when it resentenced Mr. Nora as a second offender. However, as per La. R.S. 15:301.1(A) and State v. Williams, 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 799, these prohibitions are deemed to have been imposed.[4] Thus, there is no action this Court must take with respect to Mr. Nora’s sentence. Accordingly, because the trial court failed to rule on the Mr, [f,Nora’s Motion for New Trial prior to imposing his sentence, we vacate the sentence and remand for resentencing as a second offender.

BATSON CHALLENGE

Mr. Nora contends that the trial court erred by denying his counsel’s Batson challenge to the State’s use of peremptory challenges, specifically the challenge that the State used with respect to Juror Ramsey. This Court rejected the same assertion in Mr. Celestine’s appeal:
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court held that a prosecutor’s use of peremptory challenges to strike potential jurors on the basis of their race violates the Equal Protection Clause. The dictates of Batson are codified in La.C.Cr.P. art. 795.[5]
In State v. Nelson, 10-1724, 10-1726, p. 9 (La.3/13/12), 85 So.3d 21, 28-9, the Louisiana Supreme Court adopted the three-step procedure outlined in Batson that a trial court is to use when a party claims that the other party has used peremptory challenges based on race:
Under Batson and its progeny, the opponent of a peremptory strike must first establish a prima facie case of purposeful discrimination. Second, if a prima facie showing is made, the burden shifts to the proponent of the strike to articulate a race-neutral explanation for the challenge. Third, the trial court then must determine if the opponent of the strike has carried the ultimate burden of proving purposeful discrimination. Batson, 476 U.S. at 94-98, 106 S.Ct. 1712, 90 L.Ed.2d 69. See also, Johnson v. California, 545 U.S. 162, 168, 125 S.Ct. 2410, 2416, 162 L.Ed.2d 129 (2005); State v. Sparks, 1988-0017 (La.5/11/11), 68 So.3d 435, 468; State v. Givens, 99-3518 (La.1/17/01), 776 So.2d 443, 448.
|7The Court explained that in order to establish a pnma facie case, the objecting party must show: “(1) the striking party’s challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for *1243 cause; and (3) relevant circumstances sufficient to raise an inference that the peremptory was used to strike the veni-reperson on account of his being a member of that cognizable group.” Id., 10-1724, 10-1726, pp. 9-10, 85 So.3d at 29. Once the objecting party has met these requirements, the burden then shifts to the party who made the challenges to show race-neutral reasons for the challenges. Id., 10-1724, 10-1726, p. 10, 85 So.3d at 29. As noted in Nelson:
To rebut a prima facie showing of intentional discrimination, the proponent of a peremptory challenge must offer a race-neutral explanation. Batson, 476 U.S. at 97, 106 S.Ct. 1712, 90 L.Ed.2d 69. See also, Snyder v. Louisiana, 552 U.S. 472, 477, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008); Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995). This explanation does not have to be persuasive, or even plausible, but must be more than a mere affirmation of good faith or assumption that the challenged juror would be “partial to the defendant because of their shared race.” Purkett, 514 U.S. at 768, 115 S.Ct. 1769; Hernandez [ v. New York], 500 U.S. [352] at 360, 111 S.Ct. 1859 [114 L.Ed.2d 395 (1991) ]; Batson, 476 U.S. at 97, 106 S.Ct. 1712. At the second step of the Batson inquiry, the issue is the facial validity of the striking party’s explanation. Purkett, 514 U.S. at 768, 115 S.Ct. 1769; Hernandez, 500 U.S. at 360, 111 S.Ct. 1859; Sparks, 68 So.3d at 474. Unless a discriminatory intent is inherent in the striking party’s explanation, the reason offered will be deemed race-neutral. Id.
10-1724, 10-1726, p. 11, 85 So.3d at 30.
In the third step, “the court must then determine whether the objecting party has carried his burden of proving purposeful discrimination.” Id., 10-1724, 10-1726, p. 15, 85 So.3d at 32. The “final step involves | ^evaluating the persuasiveness of the justification’ proffered by the striking party, but ‘the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.’ ” Nelson, 10-1724, 10-1726, p. 15, 85 So.3d at 32, quoting Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). “[I]t is not until the third step that the persuasiveness of the justification becomes relevant-the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.’ ” Id.
After the first round of voir dire, the State exercised four peremptory challenges, all against potential African-American jurors. Counsel for Mr. Nora [footnote omitted] initially raised a Bat-son challenge, and asked the State to provide race-neutral reasons for its peremptory challenges. Without waiting for the trial court to find that the defense made a prima facie case, the prosecutor gave reasons for striking each of the four jurors. The fact that the trial court did not find a prima facie showing is irrelevant; as noted in Nelson, once the party making the peremptory challenges provides race-neutral reasons, the issue of a prima facie showing is moot. 10-1724, 10-1726, p. 10, 85 So.3d at 29.
With respect to its peremptory challenges, the prosecutor noted that one potential juror was not paying attention *1244 during voir dire; one said she believed that people needed guns to protect themselves, and the prosecutor thought she may be biased against the State if one of the defendants raised this as a defense; one “was all over the place,” seeming to require each witnesses’ testimony to be exactly the same as other witnesses; and one adamantly agreed with defense counsel that the defendants need not testify, and she rolled her eyes during the discussion of this issue during voir dire (Juror Ramsey). The trial court found that the State had provided racially-neutral reasons for the peremptory challenges. The trial court then noted that the State had stricken only four jurors out of twenty-one potential jurors, and the trial court denied the Batson claim. Counsel for Mr. Nora objected to the trial court’s denial of the Batson challenge, asserting that, as to Juror Ramsey, she was merely indicating her willingness to follow the law.
[[Image here]]
| ;,Mr. Celestine avers that the trial court erred in its ruling only as to Juror Ramsey. Mr. Celestine contends that the reasons supplied by the prosecutor were not race-neutral, and he asserts that once the State gave its reasons, the trial court failed to conduct step three of the Batson analysis to determine if the reasons supplied were indeed race-neutral.
Juror Ramsey agreed with Mr. Celes-tine’s counsel’s statement that the defendants need not testify at trial. Mr. Cel-estine contends that this statement is a correct interpretation of the law, and if this was not a pre-textual reason, then the State would have had a basis to strike every juror who could follow the law. However, Juror Ramsey’s “adamant” agreement with the statement, not the fact that she agreed with it, could be an indicator that she would be more inclined to side with the defense than the State. The prosecutor also stated that Juror Ramsey rolled her eyes[6] during the voir dire discussion of the defendants’ right not to testify. Mr. Celestine asserts that the trial court erred by finding that this was a race-neutral reason.
As noted in Nelson, the race-neutral reason given is valid “[ujnless a discriminatory intent is inherent.” 10-1724, 10-1726, p. 11, 85 So.3d at 30. Juror Ramsey’s actions could be an indicator that she would favor the defense and the reasoning provided by the State was not inherently discriminatory. Therefore, the trial court did not abuse its discretion by finding the State’s reasoning to be race-neutral.
Celestine, 12-1541 at pp. 5-9, 131 So.3d at 951-54. Counsel for Mr. Nora failed to raise additional assertions as to the Batson challenge beyond those previously averred by counsel for Mr. Celestine. For the reasons set forth by this Court in Celes-tine, we find that the trial court correctly denied Mr. Nora’s Batson challenge and affirm.

\,MOTION TO SEVER

Mr. Nora contends that the trial court erred by denying the Motion to Sever his *1245 trial from that of Mr. Celestine. He asserts that the trial court should have granted his Motion to Sever prior to trial because of possible antagonistic defenses. Mr. Nora avers that the trial court compounded this error when it refused to grant a severance the morning of trial or his Motion for Mistrial at the conclusion of the trial, based on the opening argument of Mr. Celestine’s counsel, which cast aspersions upon him.
As per La.C.Cr.P. art. 704, “jointly indicted defendants shall be tried jointly unless” ... “[t]he state elects to try them separately” or, upon the defendant’s showing by convincing evidence, the trial court determines, after a contradictory hearing, “that justice requires a severance.”
This Court further explained in State v. Everett, 11-0714, p. 33 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 629:
Whether justice requires a severance must be determined by the facts of each case. State v. Prudholm, 446 So.2d 729, 741 (La.1984). A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. Id. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. Id.
With respect to a claim that a severance is necessary due to antagonistic defenses, this Court in State v. Crowell stated:
[A] severance is required when each defendant intends to blame the other because a joint trial would require the defendants to defend not only against the State, but also against each other. State v. Burton, 96-1248 at p. 11 [ (La.App. 4 Cir. 12/9/98) ], 727 So.2d [518] at 523. This rule also applies to the situation where only one defendant blames the other. State v. McGraw, 366 So.2d 1278 (La.1978). But when each confession or statement involves both defendants as principals and only the extent of their | n participation is contradictory, the defenses are not antagonistic; and, the degree of blame each defendant seeks to cast on the other defendant does not warrant a severance. State v. August, 96-2777 at p. 8 [ (La.App. 4 Cir. 9/16/98) ], 719 So.2d [536] at 541.
99-2238, pp. 6-7 (La.App. 4 Cir. 11/21/00), 773 So.2d 871, 877. Nonetheless, “[m]ere unsupported allegations that defenses will be antagonistic are not sufficient to require a severance.” State v. Cavazos, 11-0733, p. 13 (La.App. 4 Cir. 5/16/12), 94 So.3d 870, 881. “Furthermore, the fact that each defendant has pointed a finger at the other does not make defenses automatically antagonistic.” Id. “Prejudice must be shown if defendants are to receive separate trials.” Id. As noted by this Court in State v. Krodinger, 12-0134, p. 12 (La.App. 4 Cir. 2/27/13), 128 So.3d 270, 278: “Where the thrust of the co-defendant’s testimony is simply to deny his own involvement and not implicate the other defendant, justice does not require a severance; this rule applies even though the codefendant’s testimony may, by inference, be damaging to the other defendant.”
In the present case, contrary to Mr. Nora’s assertion, the parties did not demonstrate prior to trial that they were entitled to a severance. Mr. Celestine initially filed a Motion to Sever. At the hearing on the motion, counsel for Mr. Celestine contended that a severance was necessary because she and Mr. Nora’s counsel would be employing antagonistic defenses at trial. In support, Mr. Celes- *1246 tine’s counsel stated that Mr. Nora’s counsel might argue that both guns were in Mr. Celestine’s possession. The State countered that the facts did not show the possibility of antagonistic defenses, given that Mr. Nora’s gun was in his waistband; there were no allegations that either of the defendants made any statements to the police; and there was no allegation that the police officers saw the men passing guns between the front and back seats. The trial court noted that the | ^“gist” contained in the police report showed that Mr. Nora’s gun was found after the police officers removed him from the car and placed him onto the ground, while Mr. Celestine’s gun was found when it fell off of his lap onto the floorboard of the back seat of the car. The trial court noted that it would not sever the trial based upon speculation that one defendant might take the stand or in the absence of any specification of an antagonistic defense.
Counsel for Mr. Nora then alleged that the State approached Mr. Celestine’s attorney and asked if Mr. Celestine would testify against Mr. Nora, creating an atmosphere that could be antagonistic. Rejecting both counsels’ theory that the jury could reasonably believe that the driver was in possession of one of the guns, the trial court denied the Motion to Sever. Although Mr. Celestine’s counsel noted her intent to take writs from this ruling, she did not. Because the defendants could make no showing of antagonistic defenses, the trial court properly denied the motion to sever at that time.
After voir dire, just prior to the beginning of opening; statements, Mr. Celes-tine’s counsel re-urged the motion for severance. She also stated at that time: “But it is clear that as this trial progresses, we wont [sic] be arguing that they had possession of the gun.” Mr. Nora’s counsel then joined in the motion, noting that she would be implicating Mr. Celestine in the case. The State suggested that the evidence did not support the use of antagonistic defenses, given that one gun was found in Mr. Nora’s waistband, and the other gun fell off of Mr. Celestine’s lap. Each counsel asserted that she would argue that the other defendant was in possession of a gun, and the State countered that none of the witnesses would testify that either defendant had both guns. The trial court denied the Motion to Reconsider the Severance and Mr. Celestine’s Motion for Mistrial.
113The matter of the severance was alluded to soon thereafter, when both counsel asked the trial court to designate which defendant would go first because they could not agree. The trial court noted that this problem did not exist during voir dire, and it discounted counsel’s argument that this disagreement “bolstered” the motion to sever.
During the opening statement by counsel for Mr. Celestine, counsel argued that while her client was innocent, Mr. Nora was guilty. Mr. Celestine’s counsel exhorted the jurors to put Mr. Nora in jail and stated that Mr. Nora was a felon. Counsel for Mr. Celestine then stated: “How do you know he’s guilty? Well, he lied about his name. He kept giving a fake name over and over as [the ADA] pointed out.” Mr. Celestine’s counsel stated that the police officers found a gun on Mr. Nora, while they did not actually see a gun in Mr. Celestine’s possession. Counsel for Mr. Celestine theorized that because the police officers found two guns, they would “put one of them on him” in order to get him to “flip” and testify against Mr. Nora. Mr. Celestine’s counsel *1247 then stated: “Mr. Celestine is not flipping. Because you don’t flip on people with warrants out for you for murder.[7] You don’t flip on violent people like Mr. Nora.” Counsel for Mr. Nora objected, and the trial court sustained the objection. Mr. Nora’s counsel, however, did not move for a mistrial at that point.
During the trial, neither defendant presented any evidence. Prior to closing argument, Mr. Celestine’s counsel re-urged the Motion to Sever and the Motion for Mistrial, making reference to an argument by Mr. Nora’s counsel that the jury could consider flight as evidence of guilt. It is unclear when Mr. Nora’s counsel made this statement, but there is no indication Mr. Celestine’s counsel objected toj^any such statement by Mr. Nora’s counsel. Mr. Celestine’s counsel then argued once again that the evidence showed that the defendants’ trials should have been severed and Mr. Celestine’s Motion for a Mistrial should have been granted. The trial court denied both motions. Mr. Nora’s counsel then joined in both motions, referring to the opening statement of Mr. Cel-estine’s counsel that suggested Mr. Nora was a violent criminal. The trial court then denied Mr. Nora’s motions.
Mr. Nora now contends that the trial court erred by denying the Motion to Sever and his Motion for Mistrial. Mr. Nora avers that the opening statement by Mr. Celestine’s counsel made Mr. Celes-tine an accuser against him. He notes that Mr. Celestine’s counsel told the jury that Mr. Nora was a felon. However, the transcript shows that the parties agreed to stipulate prior to the beginning of opening statements that Mr. Nora had prior convictions for possession of cocaine and possession of marijuana, third offense. Thus, the jury would have learned of Mr. Nora’s prior convictions even if Mr. Celestine’s counsel had not mentioned it in her opening statement. In addition, as quoted above, prior to the start of opening statements, Mr. Celestine’s counsel noted that she would not be arguing that “they had possession of the gun.” Mr. Nora asserts that the two guns were similar. He also highlights the fact that while the jury found Mr. Celestine guilty of attempted possession, the jury found him guilty as charged of possession of a firearm, and he attributes this disparity to Mr. Celestine’s counsel’s argument. However, the jury could have found Mr. Celestine guilty of the lesser crime because they found the gun attributed to him after it fell off of his lap, while they found the other gun in Mr. Nora’s actual possession (in his waistband).
11SWhile Mr. Celestine’s counsel sought during opening statement to depict Mr. Nora as a violent felon, there was no evidence adduced at trial that supported the claim that the police officers “planted” the gun on him in order to pressure him into testifying against Mr. Nora; the evidence did not present an antagonistic defense. Mr. Celestine was seated in the back seat; the driver and Mr. Nora were seated in the front; and the police officers did not observe any movement that was consistent with either front-seat passenger passing a gun to Mr. Celestine in the back, which would be the only scenario that would fit the defense that the gun was in the possession of either Mr. Nora or the driver. In addition, Mr. Celestine’s counsel did not continue this “defense” during closing argument because Mr. Nora’s counsel made no objections during that argument. Given these factors, the trial court did not *1248 abuse its discretion by denying the re-urged Motion to Sever.
Finally, Mr. Nora contends that the trial court should have given the jury an admonition in lieu of granting his Motion for Mistrial. In support, he cites La.C.Cr.P. art. 771, which he interprets as requiring a trial court give an admonition if it denies a motion for mistrial. However, this interpretation is faulty. La.C.Cr.P. art. 771 provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, |inor a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial. (Emphasis added).
While Mr. Nora correctly notes that Mr. Celestine’s counsel was an officer of the court, his own counsel did not request an admonition, either at the time that Mr. Celestine’s counsel made the statements (his counsel only objected, which the court sustained) or when he finally moved for a mistrial just prior to closing arguments. Indeed, an admonition at that point in the trial would have only emphasized what Mr. Celestine’s counsel said hours earlier, which was not supported by the evidence adduced at trial. Mr. Nora cannot now assert that the trial court erred by failing to give an admonition when his counsel did not ask for one. Accordingly, we find that Mr. Nora’s assertion lacks merit and affirm.

DECREE

For the above-mentioned reasons, we find that the State provided race-neutral reasoning for striking the juror. Therefore, the trial court did not err in denying the defendant’s Batson challenge. We also find that the defendant was not entitled to a severance. However, because the trial court failed to rule on the defendant’s Motion for New Trial prior to imposing his sentence, we vacate the sentence and remand for resentencing as a second offender.
CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED

. The bill also charged Delbert Celestine with one count each of being a convicted felon in possession of a firearm and simple escape. He was tried with Mr. Nora and found guilty of attempted possession of a firearm by a convicted felon and attempted simple escape. This Court affirmed his convictions and sentences. State v. Celestine, 12-1541 (La.App. 4 Cir. 12/18/13), 131 So.3d 947. Mr. Celestine’s writ from this Court's opinion is pending in the Supreme Court, 2014-KO-0158.

. Although the minute entries reflect that Mr. Nora moved to withdraw his guilty plea to the multiple bill in this case, the transcript reflects that he only moved to withdraw his guilty plea in case 507-039, which was part of the plea bargain case whereby he would plead *1240 guilty to the multiple bill in this case and receive only a twenty-five-year sentence, rather than the forty-year sentence that the trial court indicated it would impose. Also at that hearing, counsel for Mr. Nora indicated that Mr. Nora wished to appeal both cases. However, only Mr. Nora's conviction of being a felon in possession of a firearm is presently before this Court. Mr. Nora's trial counsel also withdrew, and the trial court appointed the present counsel for appeal.

. In this Court’s opinion, this alias was listed as "Sidney” Patterson. Although there was one reference at trial to "Sidney," the parties repeatedly referred to Mr. Nora's alias as "Steven Patterson.”

. In addition, the trial court properly did not impose a fine because Mr. Nora was sentenced as a multiple offender. See State v. Dickerson, 584 So.2d 1140, 1140 (La.1991).

. In a footnote, this Court quoted La.C.Cr.P. art. 795(C), which prohibits the use of peremptory challenges based solely on the race or gender of the juror.

. This Court stated in a footnote: "During the second round of voir dire, the State raised a reverse — Batson claim against counsel for Mr. Nora, the same counsel who raised the Bat-son claim against the State. In giving her reasons for striking one of the jurors, counsel noted that that juror kept rolling her eyes. The trial court found that this reason was race-neutral. Therefore, this reason cannot be race-based for one party and race-neutral for the other party.”

. The police officers discovered that an arrest warrant was issued for the driver for murder.