NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 KA 0794

STATE OF LOUISIANA

VERSUS

ERNEST L. GOVERNOR

*DATE OF JUDGMENT:*     FEB 2 3 2024

ON APPEAL FROM THE EIGHTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERVILLE, STATE OF LOUISIANA
NUMBER 425-21, DIVISION D

HONORABLE ELIZABETH A. ENGOLIO, JUDGE

* * * * * *

| | |
|---|---|
| Antonio M. "Tony" Clayton<br>District Attorney<br>Terri Russo Lacy<br>Assistant District Attorney<br>Plaquemine, Louisiana | Counsel for Appellee<br>State of Louisiana |
| Gwendolyn K. Brown<br>Baton Rouge, Louisiana | Counsel for Appellant<br>Ernest L. Governor |

* * * * * *

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

Disposition: CONVICTION AND SENTENCE AFFIRMED.

*Guidry, C.J. Concurs.*

**CHUTZ, J.**

The defendant, Ernest L. Governor, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1(A)(1), and he pled not guilty. After a trial by jury, the defendant was found guilty as charged. The defendant was subsequently sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The defendant now appeals, assigning error to the trial court's denial of his *Batson*[1] challenges to peremptory strikes exercised by the State. For the following reasons, we affirm the conviction and sentence.

## STATEMENT OF FACTS

On March 29, 2021, at the Elayn Hunt Correctional Center, the defendant used a homemade knife to stab to death a fellow inmate, Reynault Danos. The confrontation took place in Danos's cell and was captured by video surveillance. The Duty Warden, Colonel Donald Johnson, received an emergency phone call from the supervisor on shift, alerting him of the incident. When Colonel Johnson arrived at the tier, he found Danos on the floor of his cell, deceased.

## BATSON CHALLENGES

The defendant asserts that the trial court erred in overruling his *Batson* challenges to the State's use of peremptory strikes against nine African-American prospective jurors. In assignment of error number two, the defendant argues that the trial court, in determining that the State's reasons for the strikes were race neutral, erroneously applied the three-step analysis outlined in *Batson*.

An equal protection violation occurs if a party exercises a peremptory challenge to excuse a prospective juror on the basis of that person's race. See *Batson*, 476 U.S. at 96-97, 106 S.Ct. at 1723. In *Batson*, 476 U.S. at 93-98, 106 S.Ct. at 1721-24, the United States Supreme Court adopted a three-step analysis to

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct.1712, 90 L.Ed.2d 69 (1986).

2

determine whether the constitutional rights of a defendant or prospective jurors have been infringed by impermissible discriminatory practices. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race neutral explanation for striking the juror(s) in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *State v. Jackson*, 2016-1565 (La. App. 1st Cir. 10/12/17), 232 So.3d 628, 632, writ denied, 2017-1944 (La. 5/25/18), 243 So.3d 566.

To establish a prima facie case, the defendant must show: (1) the striking party's challenge was directed at a member of a cognizable group; (2) the challenge was peremptory rather than for cause; and (3) relevant circumstances sufficient to raise an inference that the prosecutor struck the venire person on account of his being a member of that cognizable group. *State v. Nelson*, 2010-1724 (La. 3/13/12), 85 So.3d 21, 29. In determining whether a prima facie showing of purposeful discrimination has been demonstrated, *Batson* instructs that the trial court should consider all relevant facts, including any pattern of strikes by the prosecutor against African-American jurors and any questions or statements by the prosecutor during voir dire examination or in exercising his challenges which may support or refute an inference of purposeful discrimination. See *Jackson*, 232 So.3d at 632.

If a defendant makes a prima facie showing of discrimination in the use of peremptory challenges, the burden then shifts to the State to offer racially-neutral reasons for the use of the peremptory challenges. A neutral explanation for the challenge may be something less than a justification of a challenge for cause, but must be something more than the prosecutor's assumption or intuition that the juror will be partial to the defendant solely because of the prospective juror's race.

3

The neutral explanation must be one which is clear, reasonably specific, legitimate, and related to the particular case at bar. After the prosecutor has presented reasons for his use of a peremptory challenge that on their face are racially neutral, the trial court must assess the weight and credibility of the explanation in order to determine whether there was purposeful discrimination in the use of the challenge. The ultimate burden of persuasion is on the defendant. *State v. Kitts*, 2017-0777 (La. App. 1st Cir. 5/10/18), 250 So.3d 939, 962, writ denied, 2018-00872 (La. 1/28/20), 291 So.3d 1057.

The mere invocation of *Batson* when minority prospective jurors are peremptorily challenged in the trial of a minority defendant does not present sufficient evidence to lead to an inference of purposeful discrimination. *State v. Battley*, 2022-0940 (La. App. 1st Cir. 7/6/23), 371 So.3d 94, 101. The State, in presenting race-neutral reasons for its excusal of prospective jurors, need not present an explanation that is persuasive, or even plausible; unless a discriminatory intent is inherent in the striking party's explanation, the reason offered will be deemed race neutral. A reviewing court owes the trial court's evaluations of discriminatory intent great deference and should not reverse them unless they are clearly erroneous. *Jackson*, 232 So.3d at 632-33.

Herein, the defendant's *Batson* challenges were raised during backstrikes, which occurred after voir dire, challenges for cause, and peremptory challenges of three panels of prospective jurors. The defense attorney specifically noted that the majority of the State's strikes had been of African-American potential jurors. The parties stipulated that nine of the ten potential jurors excused by backstrikes exercised by the State were African American, with the other being a Caucasian male.[2] Based on the stipulation, the trial court determined that the defendant met

---

[2] As the defendant concedes on appeal, the record does not identify the races of the potential jurors or reveal the racial makeup of the chosen jurors.

4

his initial burden and the State was required to provide race-neutral reasons for the strikes.

The State offered the following race-neutral reasons for striking African-American prospective jurors. As to the first strike at issue, Ivan Hamilton, the State noted that Hamilton took issue with the intent to inflict great bodily harm, as opposed to the intent to kill, being sufficient under the law to prove second degree murder. Regarding the second prospective juror at issue, Tomeka Huff, the State noted that her brother had been convicted of robbery. The State said that the third prospective juror, Joyce Price, indicated that she had some unarticulated personal feelings that she would suppress during the trial. Regarding Tonya Williams, the fourth prospective juror at issue, the State specified that she is from the St. Gabriel area, where the offense took place, and had concerns with her response regarding the burden of proof.[3] The State then noted that the fifth potential juror at issue, Heidi Godchaux, had a sister who was the victim of a stabbing. As to Cheryl Schexnayder, the sixth prospective juror at issue, the State specified that she worked for the Department of Public Safety and Corrections for thirty years in a setting that housed criminal inmates, was from St. Gabriel, and knew one of the defense attorneys. The State noted that the seventh potential juror at issue, Nakashia Snowten, knew one of the defense attorneys and had a brother in jail for second degree murder. Regarding the eighth potential juror, Genesis Bouvay, the State noted that her father had a long prison record.

The defense attorney challenged the State's given reasons, contending the State was required to give "a just cause" for striking the African-American potential jurors and failed to provide a valid reason for any of the strikes. While

---

[3] Although the State initially indicated that Williams knew or knew of one of the defense attorneys, prior to its ruling, the trial court stated that its notes on Williams did not contain any indication that she knew one of the defense attorneys. Thus, this portion of the State's reason for striking Williams was not considered by the trial court and, likewise, is not considered by this court. Once the trial court corrected the State on this stated reason, the State noted the burden of proof concern as an additional reason for striking Williams.

the jurors at issue did not indicate that the stated issues would prevent them being impartial jurors or from following the law, the trial court found that the State adequately provided race neutral reasons for the strikes. The trial court noted that the State did not rely on the potential jurors' nonverbal communication or gestures, but instead articulated verbal responses upon which the strikes were based. Thus, the trial court denied the defendant's *Batson* challenges.

In his appeal brief, the defendant notes that the State failed to provide an explanation for its strike of one of the nine African-American prospective jurors. The defendant further notes that the State accepted Caucasian jurors who lived in the area and/or had relatives who were victims of crimes or worked in law enforcement. Thus, the defendant argues the trial court's analysis on step three of the *Batson* test was inadequate, contending that a proper analysis would have led the court to find that some of the State's proffered reasons appeared to be pretextual.

Regarding the defendant's argument on appeal that the State failed to provide a race neutral reason for one of the strikes against an African-American prospective juror, the defendant failed to bring this to the trial court's attention or re-urge his *Batson* challenge as to that specific juror. Further, while the State may have failed to strike some non-African-American potential jurors that shared traits with stricken jurors, that alone would not show that the explanations for excusing the other prospective jurors were a mere pretext for discrimination. Although the defendant now names specific jurors accepted by the State, the defendant did not name these jurors or make this argument below in asserting his *Batson* challenge. The accepted jurors may have exhibited traits that the State reasonably could have believed would have made these individuals desirable as jurors. *State v. Drake*, 2010-1518 (La. App. 1st Cir. 3/25/11), 2011 WL 1103422, at *7 (unpublished), writ denied, 2011-0838 (La. 11/18/11), 75 So.3d 450. As the defendant failed to

6

give the trial court a chance to address these circumstances, these arguments were not properly preserved for appeal. See *Jackson*, 232 So.3d at 634.

We also note that it appears the defendant heavily relied on bare statistics to support a prima facie case of race discrimination. However, a pattern of strikes is only one of the factors that may be considered in making this fact-intense determination. *Kitts*, 250 So.3d at 962. While **Batson** cites a "pattern of strikes" as an example of the type of evidence that can give rise to an inference of discrimination, another equally significant example cited in **Batson** is the voir dire. See *United States v. Bergodere*, 40 F.3d 512, 517 (1st Cir. 1994), cert. denied, 514 U.S. 1055, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995) (citing voir dire colloquy between a prospective juror and attorneys which reflected "a legitimate, nondiscriminatory reason why conscientious counsel might desire to exclude the juror from further service"). In this case, the prosecutor's reasons were based on verbal exchanges with the potential jurors at issue during voir dire.

We reiterate that the prosecutor's explanations need not rise to the level of a challenge for cause. Based on our review of the voir dire, we find that the State's race-neutral explanations were reasonable, and that the proffered rationales had some basis in accepted trial strategy. See *Jackson*, 232 So.3d at 634. Regarding the law, Hamilton expressed reservations about a life sentence being imposed in a case where the defendant "got angry and at the time wanted to hurt someone but not necessarily kill them." Price initially stated that she could not let her personal feelings come into play, as the jury would be required to live by the law, she believes in the law, she follows the law, and she ultimately agreed that the applicable burden of proof was "okay" with her. However, Price intermediately stated, "the jurors have to firmly believe that the attorneys have presented their case to a hundred percent to the law." When then asked to repeat the given percentage, she reiterated, "[a] hundred percent." Williams similarly indicated that

7

she did not have a problem with serving on a murder trial involving a possible life sentence, stating, "[a]s far as -- the way that I look at it is if it's proven to, as you said, a reasonable doubt then if that is the sentence that's what it is." She then added, "[i]f the crime was committed and that's what is proven then that's what it is."

Regarding the potential jurors' backgrounds, Huff stated her brother was arrested for robbery when he was sixteen years old, and Godchaux stated that her sister had been stabbed to death in 2006 and that she herself had been stabbed in the incident as well. Williams, Schexnayder, and Snowten lived in St. Gabriel, and Snowten knew the defense attorney, as did Schexnayder. As the State indicated, Schexnayder further had a lengthy history of working in law enforcement. Finally, as the State indicated, Bouvay stated that her father had been in and out of prison since before she was born and was released again that year.

Based on the State's articulated reasons as a whole and our independent review of the voir dire, we find the defendant failed to establish purposeful discrimination in this case. The transcript does not reveal any evidence that the use of peremptory strikes by the State was motivated by impermissible considerations. See *Jackson*, 232 So.3d at 635. Further, we find no error in the trial court's application of the three-step *Batson* analysis. Thus, the assignments of error are without merit.

**DECREE**

For these reasons, we affirm the conviction and sentence of defendant-appellant, Ernest Governor.

**CONVICTION AND SENTENCE AFFIRMED.**